to an award for the value of the leases during the existence of the trust estate in favor of the widow. It may be difficult to measure the value, because such term is necessarily uncertain, but the difficulty of measurement does not defeat the right. The rule by which the damages are to be measured is found expressed in Matter of Daly, 29 App. Div. 286, 51 N. Y. Supp. 576, and does not need further elaboration by us. The foregoing discussion serves to show that the basis upon which the award to the tenant was made by the commissioners was erroneous and improper.

It follows that the award of the commissioners as to the value of the leasehold estate should be reversed, and the report sent back to the commissioners of estimate for revision and correction, with $10 costs and disbursements to the appellants. All concur.

---

(80 App. Div. 556.)

PERTH AMBOY MUT. LOAN, HOMESTEAD & BUILDING ASS'N v. CHAPMAN.

(Supreme Court, Appellate Division, First Department. March 6, 1903.)

1. NEGOTIABLE SECURITIES—TITLE OF HOLDER—GOOD FAITH.
One who takes negotiable securities before maturity, for a valuable consideration, without knowledge of defect of title and in good faith, holds them against all the world.

2. PLEDGE—TITLE OF HOLDER—NOTICE OF DEFECT.
Where one with whom negotiable securities had been pledged by one to whom they did not belong sought to hold them as against the true owner, it was incumbent on him to show that he had made advances on the faith of the securities.

3. SAME—NOTICE OF TITLE.
In order to attack the bona fides of the pledgee of negotiable securities who obtained them from one not the owner, it is not necessary to show that he had notice of the particular person who was the real owner.

4. SAME—QUESTION FOR JURY.
Where one holding negotiable securities, pledged with him by one not the owner, makes advances on them after he has learned that the pledgor is not the owner, the question of his good faith is for the jury.

5. SAME—ADVANCES—QUESTION FOR JURY.
On an issue whether one with whom negotiable securities were pledged by one not the owner thereof had made advances on the faith of them after a certain date, the pledgee and his manager testified that he advanced "about $2,500," and that the advances were in part made on the faith of the securities. The condition of the pledgor's account with the pledgee was not shown, and the pledgor when asked about the transaction stated he could not remember or refused to answer. *Held*, that the issue was for the jury.

6. SAME—INSTRUCTIONS.
Where negotiable securities are pledged by one not the owner, and advances are made by the pledgee with knowledge that the pledgor is not the owner, in an action by the owner to recover them an instruction that there is proof of bad faith is proper.

7. SAME—EVIDENCE—COMPETENCY.
The secretary of a bank received negotiable securities in order that he might sell the same for the owner. He pledged the same with a broker, and told him that they were held as security by the bank for a loan to the pledgor, and the broker stated to the bank examiner that he held them for the account of the bank. *Held*, in an action by the owner against the broker to recover the securities, that evidence that the

broker had been sued by the receiver of the bank to recover the securities, and had settled that suit, was inadmissible, as such fact could not affect plaintiff's rights.

8. SAME—EVIDENCE—RELATIONS OF PARTIES.

Evidence as to the relations between defendant and the pledgor and defendant and the bank was competent as bearing on defendant's good faith.

Action by the Perth Amboy Mutual Loan, Homestead & Building Association against Henry T. Chapman. Judgment for plaintiff. Motion for new trial heard in the first instance at the Appellate Division. Judgment for plaintiff ordered.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Clarence F. Birdseye, for appellant.

Edward S. Savage, for respondent.

INGRAHAM, J. The action was brought to recover the value of six bonds of the Lehigh Valley Railroad Company, and six bonds of the Columbus, Hocking Valley & Toledo Railroad Company. The complaint alleges that the plaintiff was the owner of these bonds; that one Valentine, the treasurer of the plaintiff, "wrongfully and fraudulently took said bonds and delivered the same to Henry T. Chapman, Jr., the defendant above named"; that the said defendant wrongfully received the same, and now holds said bonds in his possession; that a demand was made upon the defendant for said bonds, but that the defendant refused and still refuses to deliver the same or make compensation therefor; that the said bonds were of the value of $20,000, for which amount the plaintiff demands judgment. The answer denies that the bonds belong to the plaintiff, and denies that Valentine, being the treasurer of the plaintiff, wrongfully and fraudulently took said bonds and delivered the same to the defendant; denies that the defendant wrongfully received said bonds and now holds said bonds in his possession, that a demand has been made upon him for the bonds, or that they are of the value of $20,000.

The plaintiff proved on the trial that it had purchased these bonds specified, with some Chesapeake & Ohio bonds, and that they were delivered to a committee of the trustees of the plaintiff, who kept them in a safe deposit vault in the city of New York; that on January 23, 1897, it having been determined to sell the bonds, this committee delivered them to Valentine, as treasurer of the plaintiff, for that purpose; that Valentine had purchased the bonds for the plaintiff, and was cashier of the Middlesex County Bank, a New Jersey banking corporation; that these bonds were all delivered by Valentine to the defendant shortly after he received them for the trustees; that the Chesapeake & Ohio bonds were sold by the defendant, and the proceeds thereof paid to Valentine, and by him to the plaintiff; that it was then decided not to sell the bonds involved in this action until after July 1, 1898, the bonds being left with Valentine as its treasurer; that in October, 1897, there was an examination of the affairs of the plaintiff company by an auditor, and Valentine at that time presented to the auditor a receipt signed by the defendant, dated October

13, 1897, which acknowledged the receipt of these bonds in suit, and this receipt was accepted by the auditor as evidence that the bonds in suit were held by Valentine as treasurer of the bank.

These bonds appear to have been held by the defendant as security for advances made to Valentine in stock speculations carried on in the defendant's office. In July, 1897, an employé in the Department of Banking and Insurance of the State of New Jersey called upon the defendant in relation to securities in his hands, the property of the Middlesex County Bank, and asked the defendant whether he held any bonds as security for a loan to Valentine by the Middlesex County Bank, to which the defendant answered that he did, and the witness then stated that he was the State Bank Examiner of New Jersey, and would like to see the bonds. The defendant produced the bonds, and said that he held them as the property of George M. Valentine, to secure a loan that Valentine had obtained from the Middlesex County Bank, of which he was cashier. The witness further testified that subsequently, in December, 1898, he had a second interview with the defendant, and found the same bonds in the defendant's possession; that the defendant said he was awaiting the order to sell; that the bonds had been placed in his hands by Valentine for sale, the proceeds to be sent to the bank; that he understood that Valentine had obtained a loan from the bank, and these bonds were given to secure that loan; that the witness then asked the defendant for a receipt for the bonds to annex it to his report, when the defendant gave the following receipt:

"December 19, 1898.

"I hold for account of the Middlesex County Bank of Perth Amboy, New Jersey, the following securities, viz.:
10,000 Ches. & Ohio R. R. Bonds 4%.
6,000 Col. Hocking Valley & Toledo 6%.
6,000 Lehigh Valley 4½%.

"Henry T. Chapman."

It further appeared that in June, 1899, the Middlesex County Bank failed, when it was discovered that Valentine, who had been its cashier, was a defaulter, having stolen substantially all of the property of the bank. The defendant testified on his own behalf that he first became acquainted with Valentine in 1893, when he was introduced to him by the president of the Middlesex County Bank as its new cashier; that Valentine at that time opened a personal account with the defendant, which was an ordinary account of a customer with his broker; that on January 22, 1897, he received these bonds in suit from Valentine; that Valentine never mentioned that these bonds were the property of the plaintiff, and that the defendant never knew of their interest in them until this claim was made; that about July 1, 1897, before the first call of the Bank Examiner of New Jersey, the defendant received a letter from Valentine, which was as follows:

"My Dear Mr. Chapman: The Bank Examiner was just here and I reported that the securities that you held for me were only there for sale; he may come down to see you to-morrow, July 2d. If he does would like you to make the same report to him and if you have them in your safe show them; if you have them up as collateral for loan don't be in, but leave word as directed that you are holding same for sale for me.
"Yours truly,    George M. Valentine."

The defendant also testified that subsequent to the receipt of this letter he had an interview with the Examiner, but that he did not remember what he said to him. It does not appear that at the time there was any amount due from Valentine to the defendant which the defendant had advanced upon the security of these bonds, the defendant expressly testifying that it was impossible for him to say whether he held them as collateral security for Valentine's obligations when he gave a letter to the Banking Department of the State of New Jersey, as at times Valentine was largely in the defendant's debt and at other times he was not; that it was perfectly proper to give this letter to the Banking Department of New Jersey as his account with Valentine showed that the bonds were free.

The defendant's office manager testified that on the 7th day of July, 1897, these bonds were free in his account so far as a margin was concerned; that on the 19th day of December, 1898, when the letter to the Bank Examiner was given, there was $20,000 credit to Valentine's account. The defendant also testified that shortly after April 6, 1899, he made Valentine a further loan of about $2,500, and made it in part upon the securities of the bonds in suit, and that at that time he had no knowledge of the plaintiff or any claim on its part for any of these bonds; that on July 14 or 15, 1899, he received directions from Valentine to sell all of Valentine's securities, and in pursuance of that direction he sold the bonds in question on the 15th day of July, 1899. This direction to sell was in writing, and required the defendant to sell immediately "all stocks purchased in my name or in the name of my wife in your office." No direction seems to have been given specifically as to these bonds.

Upon this testimony the defendant moved to direct a verdict in favor of the defendant, which the court denied, and to which the defendant excepted, and the question as to whether or not the defendant was a bona fide holder in good faith of these bonds was submitted to the jury. The court charged the jury that the plaintiff, in bringing this action, "assumes the burden of satisfying you that it has a good cause of action. It is bound to make out a cause of action to your satisfaction by a fair preponderance of all the evidence in the case. If it has satisfied you that it was the owner of these bonds, and that the defendant received and dealt in them in bad faith and for the purpose and with the intent on his part of depriving the plaintiff of its property, then a cause of action is made out in favor of the plaintiff. If the plaintiff has failed to establish these propositions to your satisfaction in that way, it must fail in this action, and your verdict must be for the defendant." There was no exception to this charge by the defendant. The defendant made several requests to charge, the most of which were complied with, and the only exception to which it is necessary to call attention is to a refusal to charge that, "on the contrary, the uncontradicted evidence is the other way, that there was any knowledge on the part of the defendant that the plaintiff was at any time the owner, or claimed to be the owner, of the bonds in suit, until on or about the 14th day of July, 1899"; to which the court replied: "There is no direct evidence upon that subject, but the claim on the part of the plaintiff in connection with

that point is that it does not make any difference whether or not the defendant was informed or knew that the plaintiff owned the bonds. The point, as claimed by the plaintiff, is that he knew that Valentine did not own them, and was dealing in them in bad faith;" to which the defendant excepted. The jury found a verdict in favor of the plaintiff for the amount that the defendant had received for the bonds upon the sale, and from the judgment entered upon that verdict the defendant appeals.

The first and serious question presented is whether there was evidence to sustain the verdict of the jury that the defendant received these bonds in bad faith. The burden upon a plaintiff who seeks to recover negotiable securities from a person in whose possession they are, upon the ground that he is the real owner of the securities and that they have been obtained from him by fraud, was stated in Murray v. Lardner, 2 Wall. 110, 17 L. Ed. 857, as follows:

"The possession of such papers carries the title with it to the holder. The possession and title are one and inseparable. The party who takes it before due for a valuable consideration, without knowledge of any defect of title, and in good faith, holds it by a title valid against all the world. Suspicion of defect of title, or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker, at the time of the transfer, will not defeat his title. That result can be produced only by bad faith on his part. * * * The rule may perhaps be said to resolve itself into a question of honesty or dishonesty, for guilty knowledge and willful ignorance alike involve the result of bad faith. They are the same in effect. Where there is no fraud there can, be no question. The circumstances mentioned and others of a kindred character, while inconclusive in themselves, are admissible in evidence, and fraud established, whether by direct or circumstantial evidence, is fatal to the title of the holder."

This case has been followed in this state as the settled law. In Welch v. Sage, 47 N. Y. 143, 7 Am. Rep. 423, Judge Peckham, in delivering the opinion of the court, says:

"Unless the evidence makes out a case upon which a jury would be authorized to find fraud or bad faith in the purchaser, it is the duty of the court to direct a verdict."

In Seybel v. Nat. Currency Bank, 54 N. Y. 288, 13 Am. Rep. 583, after an exhaustive examination of the authorities in England and in this country, it was distinctly held that it was necessary for the plaintiff to establish bad faith. See, also, Cheever v. Pittsburgh, etc., R. R. Co., 150 N. Y. 65, 44 N. E. 701, 34 L. R. A. 69, 55 Am. St. Rep. 646; Second Nat. Bank v. Weston, 161 N. Y. 526, 55 N. E. 1080, 76 Am. St. Rep. 283; Thompson v. St. Nicholas Nat. Bank, 113 N. Y. 325, 21 N. E. 57.

The fact that prior to December 19, 1898, when the defendant gave the certificate stating that he held these bonds for account of the Middlesex County Bank of Perth Amboy, N. J., the defendant had advanced money or given security to Valentine on the faith of these bonds, would not necessarily defeat the plaintiff's cause of action. The defendant's evidence established that on that date those advances or obligations of Valentine had been so far paid or discharged that the bonds were free. At that date the defendant had distinct notice that the bonds were not the individual property of

Valentine, and the defendant then certified that he held the bonds for the account of the Middlesex County Bank. He knew that Valentine was the cashier of that bank; that he had been in the habit of drawing cashier's checks on the bank, and had deposited them to his personal credit with the defendant. He had thus express notice that Valentine was not entitled to use these bonds for his own personal or individual credit; and to sustain his title to the bonds as against this plaintiff, who is the real owner, it must appear that the defendant, subsequent to that time, made advances upon the faith of these bonds so as to become a holder for value. There is no evidence that the defendant had any knowledge that the plaintiff claimed the bonds at that time, but he had distinct notice of the fact that then Valentine was not the owner of the bonds and entitled to pledge them for personal advances made to him; and, if with this notice he made subsequent advances to Valentine, he would not thereby become a bona fide holder of these securities. I do not understand that to attack the bona fides of the holder of negotiable securities it is necessary that he should have express notice of the particular in‹ dividual who was the real owner of the securities. If he had notice that the bonds had been stolen or fraudulently misapplied, although he had no notice of the particular individual from whom they had been fraudulently obtained, he is none the less chargeable with bad faith if he received the securities from the thief. Daniel on Negotiable Instruments thus states the rule: It is quite clear and well settled that the purchaser need not have notice of the particular fraud or equity or illegality in order to be affected by it. It is sufficient that there be notice, actual or constructive, that there is some fraud or equity or illegality affecting the original parties. 1 Daniel, Neg. Inst. § 799. In 4 Am. & Eng. Enc. of Law (2d Ed.) 303, it is said: "If the purchaser knows generally that there is something wrong about the paper, it is sufficient to put him on inquiry and affects his title." In Canajoharie Nat. Bank v. Diefendorf, 123 N. Y. 191, 25 N. E. 402, 10 L. R. A. 676, the question as to what constitutes good faith in the transfer of negotiable instruments was considered, and after a review of the authorities it was held that the burden of proving good faith is always upon the party asserting his title as a bona fide holder in a case where the proof shows that the paper has been fraudulently, feloniously, or illegally obtained from its owner or maker. See, also, Vosburgh v. Diefendorf, 119 N. Y. 357, 23 N. E. 801, 16 Am. St. Rep. 836. It is the bona fides of the person receiving the securities that is in question, not the nature of the title that a third party may have to them; and if facts are proven which, before the actual advances had been made, would sustain a finding of bad faith or fraud as against the true owner, the person receiving the securities is not a bona fide holder. This, it seems to me, was the exact question presented here. The defendant had actual notice of the fact that Valentine was not at that time the owner of the bonds. Notwithstanding that notice, he claims to have subsequently made advances to Valentine which entitles him to hold them as against the true owner; but, with notice that Valentine had no right to pledge or dispose of the bonds for his personal account, the defendant could not hold them as a bona fide holder for

an advance made to Valentine as against the real owner. I think, therefore, there was a distinct question as to the defendant's good faith in making the advances which was for the jury, and that it was not error to dismiss the complaint.

But I also think there was a further question for the jury as to whether the defendant did actually make advances to Valentine on the faith of these securities subsequent to the 19th day of December, 1898, when he certified that he held these bonds for the account of the Middlesex County Bank. The only evidence that such advances were subsequently made was given by the defendant and his manager. It is extremely general, the statement being that he advanced about $2,500 subsequently to Valentine, and that Valentine continued to draw money from him until he refused further to honor his checks. He says that these advances were in part made upon the faith of these particular bonds; but the condition of Valentine's account and the character of the advances that he claims to have made are not disclosed. The defendant testified that he was told by Valentine that the loan from the Middlesex County Bank for which these bonds were held by defendant for the bank had been paid. Valentine, who, it seems, was convicted of his fraud upon the Middlesex County Bank and sentenced to state's prison in New Jersey, was examined as a witness, but when asked about these transactions he either stated that he could not remember or refused to answer; so that upon this evidence I think there was a fair question for the jury as to whether or not this defendant did make any advances to Valentine subsequent to the time when he testified that the bonds were clear, and in consequence of which he wrote the letter to the New Jersey Banking Department. It appearing that Valentine had stolen the funds from the plaintiff, the defendant was bound to show that he had paid value for them. There was no difficulty in his stating clearly and specifically the advances that he had actually made to Valentine subsequent to that time, or the obligation that Valentine was under to him which had been incurred upon the faith of these bonds, and in the condition of the evidence upon that subject, and where it appeared that on the 19th of December, 1898, there was no obligation of Valentine upon which the defendant was entitled to retain these bonds, it was a question for the jury as to whether, in consequence of the subsequent transactions between Valentine and the defendant, advances had been made or obligations incurred which justified the defendant in retaining the possession of the bonds as against the plaintiff, the true owner. For these reasons I think the court correctly refused to dismiss the complaint and direct judgment for the defendant.

The refusal to charge the request to which attention has been called was not, I think, error. The request as printed is not intelligible, but what was intended seems to have been a request for an instruction to the jury that there was no knowledge on the part of the defendant that the plaintiff was at any time the owner or claimed to be the owner of the bonds in suit until on or about the 14th of July, 1899; and in answer to that request the court stated that there was no direct evidence upon that subject, but that the point as claimed by the plaintiff was that the defendant knew that

Valentine did not own them, and that, therefore, defendant was dealing with them in bad faith. The defendant did not except to the court's refusal to charge the request, but excepted to the observations of the court upon the request, and assuming that this would amount to an instruction that if the defendant knew that Valentine had no right to pledge the bonds, and with knowledge of that fact made advances upon them, there was then proof of bad faith on the part of the defendant. I think for the reasons before stated that that charge was correct; and subsequently, in answer to a request to charge that the defendant owed no duty to the plaintiff to make inquiry as to the bonds, but, on the contrary, had a perfect right to receive them in the ordinary course of business, the court instructed the jury, saying: "That is entirely true. If he did that, and did it in good faith, he is not liable in this action." I think that there was here presented the question for the jury whether or not any advances that had been made by the defendant were made in good faith. I think that there was no error in the charge, or refusal to charge, to which exception was taken, which justifies us in reversing the judgment.

There are several rulings upon evidence to which exceptions were taken and which are pressed upon this appeal; but I do not consider that any of them are well taken. The defendant attempted to prove that he had been sued by the receiver of the Middlesex County Bank to recover the possession of these bonds and had settled that suit; but that, 1 think, is entirely immaterial in this action. The question here was not whether the defendant had paid the Middlesex County Bank for the bonds, when all the evidence in the case is to the effect that that bank had no title to them, but whether the plaintiff was entitled to recover the bonds or their proceeds in the hands of the defendant. Before this suit was brought the defendant had knowledge of the claim of the plaintiff. The utmost that he could claim was that in consequence of the payment to the receiver of the Middlesex County Bank he had become subrogated to the right of the Middlesex County Bank to hold these bonds as against the plaintiff; but the evidence disclosed no title of the Middlesex County Bank to the bonds, or that at any time that bank had any right as against the plaintiff to the bonds or their proceeds. That this defendant had placed himself in a position which rendered him liable to the Middlesex County Bank, or to its receiver, could not affect the right of the plaintiff to recover its property. The question was whether the plaintiff was entitled to recover them or their proceeds from the defendants.

As to the exceptions to the testimony, they relate principally to evidence as to the relations that existed between Valentine and the defendant, and the Middlesex County Bank and the defendant. I think all of that evidence was competent as bearing upon the defendant's good faith, and that no incompetent evidence was received which would justify us in reversing the judgment.

Upon the whole case, I think the verdict of the jury was fairly sustained by the evidence, and that the exception should be overruled, and judgment ordered for the plaintiff, with costs in this court and in the court below. All concur.