(112 App. Div. 214)

### HIBBS v. BROWN et al.

(Supreme Court, Appellate Division, First Department. April 6, 1906.)

1. JOINT-STOCK COMPANIES—LIABILITY OF SHAREHOLDERS.

The shareholders of a joint-stock association are partners, and may be ultimately held liable as such for the debts and obligations of the association; but the members thereof may, nevertheless, legally have contracts drawn so as to confine liability to the assets of the association and thus create the same situation as to their rights and liabilities as if the joint-stock association were a corporation and the members were stockholders.

[Ed. Note.—For cases in point, see vol. 29, Cent. Dig. Joint-Stock Companies, § 12.]

2. SAME—STIPULATION AGAINST PERSONAL LIABILITY BONDS—VALIDITY.

The issue of bonds and coupons by a joint-stock association, secured by its assets, even with a stipulation against personal liability of the shareholders, is legitimate, and contravenes no statute or rule of public policy.

3. BONDS—NEGOTIABILITY.

Under Negotiable Instruments Law, Laws 1897, p. 722, c. 612, § 20, providing that an instrument, to be negotiable, must contain an unconditional promise or order to pay a sum certain in money, and must be payable on demand or at a fixed or determinable future time, and section 22, defining an unconditional promise as therein used as follows: "An unqualified promise or order to pay is unconditional within the meaning of this act, though coupled with: (1) An indication of a particular fund out of which reimbursement is to be made, in a particular account to be debited with the amount; or (2) a statement of the transaction which gives rise to the instrument. But an order or promise to pay out of a particular fund is not unconditional" bonds issued by a joint-stock association, secured by trust deed and payable to bearer, are negotiable, although by

the express terms thereof the stockholders of the association are exonerated from individual liability for payment of the bonds and interest; liability being confined to the security and to the assets of the association, and such limitation not restricting the liability to a particular fund.

**4. SAME—INTEREST COUPONS—NEGOTIABILITY—EFFECT ON BONDS.**

Under Laws 1897, p. 722, c. 612, § 20, subd. 3, providing that a negotiable instrument must be payable on demand at a fixed or determinable time, the negotiability of bonds payable absolutely at a specified time is not affected by a provision of the deed of trust securing the bonds reserving to the majority of the bondholders the right to authorize the trustees to waive default in the payment of coupons representing interest on the bonds.

**5. SAME.**

Such interest coupons are mere incidents to bonds, and, whether attached or detached, so long as they are not matured and are held and owned with the bonds, their effect is the same as the promise in the bond to pay interest, and as if coupons therefor had not been attached. Hence, the negotiability of the coupons depends on and is controlled by the negotiability of the bonds.

**6. SAME—HOLDERS IN DUE COURSE—WHO ARE.**

Under Negotiable Instruments Law, Laws 1897, p. 732, c. 612, § 97, providing that a holder of a negotiable instrument who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect to parties prior to the latter, where defendants negotiated through brokers a sale of a bond, paying the party presenting the bond the proceeds of the sale, and thereafter, on return of the same to them by the purchaser thereof because payment of interest thereon was refused on the ground that the bond and coupons had been stolen, transmitted to such purchaser another bond of the same issue and tenor, in lieu of the one returned, they were holders in due course, having in legal effect repurchased the bond and coupons by trading therefor one the title to which was not disputed.

**7. BILLS AND NOTES—BONA FIDE HOLDERS—PURCHASERS—NOTICE.**

Mere surmise or suspicion is not sufficient to put a purchaser of negotiable paper on inquiry, and the facts or circumstances must be such as to show dishonesty or bad faith on his part in refraining from making the inquiry.

Clarke, J., dissenting.

Appeal from Appellate Term.

Action by William B. Hibbs against Alexander Brown and others. Judgment for plaintiff. Defendants appeal. Reversed.

Argued before O'BRIEN, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Scott McLanahan, for appellants.
Herbert R. Limburger, for respondent.

LAUGHLIN, J. This is an action to recover the coupons. Both parties claim title to the bonds and coupons. The decision of the question depends upon whether or not they are negotiable. In January, 1902, the plaintiff was conducting a banking and brokerage business at Washington, D. C., and owned and held in the safe deposit vault in his banking house this bond, with the coupons, then unmatured, attached thereto. The evidence indicates that they were removed without his consent or knowledge by some person whose identity has not been discovered; that on April 23, 1902, the bond, with the coupons at-

tached, was presented by an individual whose name is not known, and whom the defendants were unable to describe, at the office of the defendants, who were conducting a brokerage business at Baltimore, Md., with a request that they buy it, which was declined; that the person who presented the bond then requested that defendant sell it for him; that they thereupon wired Brown Bros. in New York to sell it, and it was sold on the floor of the Stock Exchange to Joseph Walkin & Sons, brokers acting for an undisclosed principal, at the market price, that Brown Bros. then wired the defendants that the sale had been made and its terms, and the defendants accepted the bond and coupons and paid the vendor thereof in cash the entire proceeds of the sale which they were to receive from Brown Bros. without any deduction for their own services. The defendants made no record of the transaction or of the seller's name, although ordinarily a record was made of such transactions by using a check in payment. The defendants then forwarded the bond and coupons to Brown Bros. in New York, and they were delivered to the brokers who purchased the same, and they delivered them to Erico Bros., their client, for whom they were purchased, whom it is conceded were innocent purchasers for full value before maturity. The plaintiff did not discover the loss of the bond and coupons until July, 1902, and then he notified every bank and trust company in Washington, and he also notified the epress company and the Mercantile Trust Company of New York, the trustee at whose office the coupons were payable, to stop payment of the coupons and to identify any person presenting any of them for payment. Erico Bros., through the Bank of the Metropolis, presented the coupons for September, 1902, and March, 1903, to the Mercantile Trust Company for payment, and the same were paid, notwithstanding the previous notice from the plaintiff. In March, 1904, Erico Bros. also presented to the trust company, through the same bank, the coupons for September, 1903, and for March, 1904, for payment, and payment was refused. Erico Bros. then, through their brokers, through whom they had made the purchase, demanded of the brokers who had sold them for Brown Bros. that they take back the bond and unpaid coupons and refund the purchase price. Brown Bros. made a similar claim on the defendants, who by purchasing and delivering another bond of the same issue settled the claim and received back the bond and unused coupons. When the plaintiff ascertained these facts, he demanded the bond and coupons, on the ground that they had been stolen from him; and on defendants' refusing to deliver he brought this action to recover three of the coupons which had been detached from the bond. The parties stipulated that the decision of the court with respect to the title to the coupons should determine their rights with respect to the bond and coupons remaining attached.

The learned counsel for the respondent contends that the recovery should be sustained upon one of two theories—either (1) that the bond and coupons were not negotiable, in which event defendants could not obtain good title as against him; or (2) that, even if negotiable, the defendant was not a holder in due course. The learned counsel for the appellants concedes that these are the questions upon which the ownership of the property depends. He claims that the bonds and cou-

pons were negotiable and that his client is a holder in due course. This was one of a series of bonds issued in the name of "The Adams Express Company," signed "The Adams Express Company," by its president, and attested by its treasurer, and sealed with the seal of the company, and certified by the trustee. The issue aggregated $12,-000,000. The bonds were secured by a deed of trust executed by the company to said Mercantile Trust Company. They were drawn payable to bearer, unless the holder preferred to have them registered, and, if he did, they were not to be transferable except on the books of the company. The coupons were also drawn payable to bearer. In form, therefore, both bonds and coupons were negotiable; and, like similar securities of corporations, which they resemble, it was doubtless intended that they should be negotiable. Similar corporate bonds similarly secured are deemed negotiable, and the rights of a holder are the same as those of a holder of a bill of exchange. Williamsburg Sav. Bank v. Town of Solon, 136 N. Y. 465, 32 N. E. 1058; Brainerd v. N. Y. & H. R. R. Co., 25 N. Y. 496; White v. Vt. & Mass. R. R. Co., 21 How. (U. S.) 575, 16 L. Ed. 221; Shul's Law of Ry. Bonds and Mtgs. § 70.

The Adams Express Company, however, is not a corporation. It is a joint-stock association. The stockholders of such an association are partners, and may be ultimately held liable as such for the debts and obligations of the association. By the express terms of the bonds in question, and of all bonds of the same issue, the stockholders are exonerated from individual liability for payment of the bonds and interest, and liability is confined to the security and to the assets of the association. It is claimed that this restricts the liability to a "particular fund" and deprives the bond of negotiability by virtue of the provisions of sections 20 and 23 of Negotiable Inst. Law (Laws 1897, p. 722, c. 612). Said section 20, so far as material, provides that "an instrument to be negotiable * * * must contain an unconditional promise or order to pay a sum certain in money" and "must be payable on demand, or at a fixed or determinable future time." Section 22 defines an unconditional promise as therein used as follows:

"An unqualified promise or order to pay is unconditional within the meaning of this act, though coupled with: (1) An indication of a particular fund out of which reimbursement is to be made, in a particular account to be debited with the amount; or (2) a statement of the transaction which gives rise to the instrument. But an order or promise to pay out of a particular fund is not unconditional."

It is quite clear that the bond and coupons answer all the requirements of negotiability contained in the statute, unless they are excluded from its operation by virtue of the last sentence. The learned counsel for the respondents contends that the provision exonerating the stockholders from personal liability makes the bonds and coupons payable out of a particular fund, and therefore nonnegotiable. They are not expressly payable out of a particular fund, and therefore they do not, literally, at least, fall within the exception made in the statute. It is claimed, however, that the statute is but a codification of the former law, and that it was always the rule that it was essential to negotiability that the "general credit" of the maker be pledged to the payment of the

obligation. Many decisions and text-books are cited in support of this contention; and it must be conceded that they contain general broad statements of the rule and definitions tending to sustain it. The facts upon which the adjudications were had, however, were not analogous to those now before the court; and it will, we think, be found in all of them that the expressions "general credit" and "personal credit" were used, not as indicating that the entire general or personal credit of the maker must be pledged to the obligation, but rather to show that general or personal credit must be pledged, as contradistinguished from limiting the liability to a particular or specific fund, which would make the obligation in effect an assignment pro tanto of the fund, and not a negotiable bill of obligation of the maker. See Munger v. Shannon, 61 N. Y. 251; Schmittler v. Simon, 101 N. Y. 554, 5 N. E. 452, 54 Am. Rep. 737; Brill v. Tuttle, 81 N. Y. 454, 37 Am. Rep. 515.

Joint-stock associations are now in all essential aspects, except the personal liability of the stockholders, like corporations. Chapter 235, p. 412, Laws 1894; Code Civ. Proc. §§ 1919–1924; Matter of Jones, 172 N. Y. 575, 65 N. E. 570, 60 L. R. A. 476; Westcott v. Fargo, 61 N. Y. 542, 19 Am. Rep. 300; People ex rel. Winchester v. Coleman, 133 N. Y. 279, 31 N. E. 96, 16 L. R. A. 183. They have an artificial name, in which their contracts are made and their business is transacted. They have a seal. They have officers. The interests of the partners are represented by shares of stock. They survive the death of their shareholders, and, quite like corporations, they have for all practicable purposes an existence apart from the shareholders and thereby may have perpetual succession. The interests of the stockholders in the assets of the association are analogous to that of the stockholders in a corporation. The practicable difference is that ordinarily the creditor of a corporation can only have recourse to the corporate property for the satisfaction of his claim, while the creditor of the joint-stock association, after first exhausting his remedy against the association and its assets, may recover any deficiency of the shareholders; but in many instances there is a qualified statutory personal liability of stockholders of corporations. There can be no doubt, however, that it is competent for the members of a joint-stock association to have the contracts so drawn as to confine the liability to the assets, and thus create the same situation as to their rights and liabilities as if the joint-stock association were a corporation and they were stockholders.

It is not and cannot be questioned that these bonds are valid obligations. The company might lawfully make and issue its promissory notes, and on the face thereof expressly provide that the shareholders would not be personally liable thereon. No one would be deceived. Those only would discount such paper who regarded the assets of the company as sufficient security for the payment. If both the maker and party discounting such paper desired it to have the advantages of negotiability, why should it not? Payment would not be limited to a particular account or fund. All of the funds of the company could be reached, if necessary, and they would change from time to time. The assets of this association were evidently considered by investors sufficient security for the payment of these bonds and coupons to enable the association to negotiate them, notwithstanding the express stipu-

lation that·the shareholders should not be personally liable therefor. Although a particular fund is set apart as security for the payment of these bonds and coupons, their payment is not limited thereto.   All of the assets and earnings of the company are liable.   Therefore some general credit—in fact all the general credit—of the company is pledged to the payment of the bonds and coupons, and only the individual credit of the shareholders is excluded.   It is manifest that both the company in issuing these securities and those who from time to time invested in them intended and expected that they should and would be negotiable the same as similar securities of corporations.   We have a case, therefore, where the maker· intended negotiability, and where manifestly it was for its interest to have the rule of negotiability apply, for the securities would then be more marketable.   It is manifest, also, that it is to the interest of all holders of such securities, except those who lose them or from whom they are stolen, that they should be declared negotiable.   If not negotiable, the holders thereof cannot readily realize thereon, because purchasers would in that event be obliged to rely on the liability of the seller.   The issue of such bonds and coupons by joint-stock associations, even with a stipulation against the personal liability of the shareholders, is perfectly legitimate; and it contravenes no statute on rule of public policy.   Public policy requires that innocent purchasers of such securities should be protected if this may be done.   We think it does not even require a strict construction of the negotiable instruments law to hold that they are negotiable.

· The learned counsel for the respondent bases a further argument against the negotiability of the bonds or coupons upon article 7 of the trust deed, which provides, among other·things, as follows:

"The action of the trustees in enforcing and protecting the rights of the bondholders hereunder shall at all times be subject to the direction and control of the holders of a majority in amount of the bonds hereby secured and then outstanding; and such holders of a majority in amount of said bonds shall at all times have power by an instrument in writing, executed, and delivered to the trustee, to direct the trustee to waive any default of the company hereunder (except in the payment of the principal of said bonds or any of them when due at maturity), and· any or all rights resulting therefrom, upon such terms as may be directed by the majority in such writing, and any such writing, shall be binding upon the trustee and all the bondholders."

It is claimed that this provision of the deed of trust reserves to the majority of the bondholders the right to authorize the trustees to waive a default in the payment of the coupons representing the interest on the bonds, and that the coupons, thus not being payable on demand at a fixed and ascertainable time, are not negotiable.   Subdivision 3, § 20, Neg. Inst. Law, Laws 1897, p. 722, c. 612; McClelland v. N. S. R. R. Co., 110 N. Y. 469, 18 N. E. 237, 1 L. R. A. 299, 6 Am. St. Rep. 397.   Even if that be so, it does not affect the negotiability of the bonds, which are payable absolutely at a specified time and concerning which it is not suggested that the time of payment can be altered without the consent of each and every bondholder.   It is further claimed, as we understand the argument, that, even though the bonds may be negotiable, the interest coupons, owing to this provision, are not.   It is possible that the provision of the deed of trust herein quoted should

be construed as authorizing a waiver of default in the payment of interest (see Hollister v. Stewart et al., 111 N. Y. 644, 19 N. E. 782); and it may be that it should be construed as empowering a majority of the bondholders to authorize the trustees to waive a particular default in the payment of interest in so far as the trustees have any duty to perform with respect to enforcing payment out of the pledged property; but it is doubtful whether it should be so construed as to authorize the trustees to waive the default generally, so that a nonconsenting bondholder could not maintain an action upon the coupon and bond and enforce his judgment against the assets of the company other than those held by the trustees in trust for all the bondholders.

No case cited appears to be precisely in point. The argument of the learned Circuit Court Judge in Manning v. Norfolk R. R. Co 29 Fed. 838, that such a construction of the deed of trust would contradict the obligation itself, which has been put in circulation, has considerable force. See, also, Railway Co. v. Sprague, 103 U. S. 756, 26 L. Ed. 554; Hollister v. Stewart, 111 N. Y. 644, 19 N. E. 782. The bonds and coupons contain unqualified obligations to pay the principal and interest at specified times. The bond refers to the trust deed, but it might well be held that such reference was with respect to the security and to render the bond more marketable, and not less, by a provision under which the specific undertaking might be modified without the consent of the bondholder. The case of McClelland v. Norfolk & Southern R. R. Co., 110 N. Y. 469, 18 N. E. 237, 1 L. R. A. 299, 6 Am. St. Rep. 397, is not decisive of the question. There the bond made express reference to the deed of trust for the effect of default, and the court say that the case was "argued upon the assumption" by both parties that the mortgage did provide for a postponement of the time of payment of both the principal sum and interest, by the action of a majority of the bondholders; and the court proceeds to decide the case on that assumption.

The obligation on the face of the bond and coupons in the case at bar is unqualified. There is reference to the deed of trust "for a statement of the securities  *  *  *  and the nature and extent of the security and the rights of the holders of the bonds issued thereunder and secured thereby"; but this might be construed as referring to the rights of the holders of the bonds with respect to the securities, and as not qualifying the obligation to pay. It seems unnecessary, however, to decide this interesting point. The defendants are either purchasers deriving their rights through Erico Bros., or pledgees deriving their rights through the advancement made on the security of the bond at the time it was brought to them. At the time it was brought to them, and when it was delivered to Erico Bros., the coupons were all attached. The coupons are mere incidents to the bonds, and, whether attached or detached, so long as they have not matured and are held and owned with the bonds, their effect is the same as the promise in the bond to pay interest, and as if coupons therefor had not been attached, and therefore the negotiability of the coupons depends upon and is controlled by the negotiability of the bonds. Cromwell v. County of Sac, 96 U. S. 59, 24 L. Ed. 681; Kenosha v. Lamson, 9 Wall.

478, 19 L. Ed. 725; Ry. Co. v. Sprague, 103 U. S. 756, 26 L. Ed. 554; Bailey v. County of Buchanan, 115 N. Y. 279, 22 N. E. 155, 6 L. R. A. 562; Dinsmore v. Duncan et al., 57 N. Y. 573, 15 Am. Rep. 534; Evertson v. Nat. Bank, 66 N. Y. 14, 23 Am. Rep. 9. See, also, McClelland v. Norfolk & S. R. R. Co., 110 N. Y. 469–476, 18 N. E. 237, 1 L. R. A. 299, 6 Am. St. Rep. 397.

In Cromwell v. County of Sac, and Railway v. Sprague, supra, it was held that the fact that an interest coupon had matured, and payment thereof had been refused, and the coupon remained unpaid and attached to the bond, did not make the bond dishonored paper or affect its negotiability or the rights of a holder thereof receiving it in these circumstances. It would seem upon principle that the negotiability of the bond cannot depend upon the question of whether it draws interest, or when the interest is payable, or whether there be a provision by which a default in the payment of interest may be waived or the time of payment thereof extended with or without the consent of the holder. The interest being a mere incident to the principal, the holder, whose title as to the bond is within the protection of the law merchant, is entitled to the same protection as to unmatured interest or interest coupons. Of course, the time of payment of the interest depends upon the contract, and if the default be waived or the time extended by virtue of a provision of the contract authorizing it, if any such there be, then the right to enforce payment thereof would be postponed accordingly; but as against any prior holder of the bond I see no escape from the conclusion that, if good title to the principal is obtained, good title to the unmatured interest passes with it.

There is no force in the contention that the defendants are not holders in due course. It is conceded that Erico Bros. were innocent purchasers of the bond in due course and for full value. The appellant attempts to make this argument by claiming that the sale to Erico Bros. was rescinded, and that defendants have only such rights as they acquired by advancing the money at the time the bond was delivered to them, as if they were the purchasers. The form of the transaction does not affect their title. How could the sale be rescinded without the consent of the seller? The defendants no longer had authority to represent him. They did not assume to do so, but acted in their own right, perhaps to avoid litigation, and perhaps to prevent any question arising that might affect their reputation as bankers and ability to dispose of securities through the Stock Exchange in the future, and in legal effect repurchased the bonds and coupons by trading one therefor the title to which was not disputed. There is no evidence that they were parties "to any fraud affecting the instrument," and therefore their title in the right of Erico Bros. is perfect. Section 97, Neg. Inst. Law, Laws 1897, p. 732, c. 612; Northampton Nat. Bank v. Kidder, 106 N. Y. 221, 12 N. E. 577, 60 Am. Rep. 443.

But, even if their only rights are those derived from the original transaction, still they would be protected, either as bona fide purchasers, or as purchasers or pledgees. Mere surmise or suspicion is no longer sufficient to put a purchaser of negotiable paper upon inquiry. The facts or circumstances to put him upon inquiry must be such as to show dishonesty or bad faith on his part in refraining from making the in-

quiry. Cheever v. Pittsburgh, S. & L. E. R. Co., 150 N. Y. 59, 44 N. E. 701, 34 L. R. A. 69, 55 Am. St. Rep. 646; Manhattan Sav. Inst. v. N. Y. Nat. Exch. Bank, 170 N Y. 58, 62 N. E. 1079, 88 Am. St. Rep. 640; Bank of Monongahela Valley v. Weston, 172 N. Y. 259, 64 N. E. 946; Perth Amboy Mut. Loan Ass'n v. Chapman, 80 App. Div. 556, 81 N. Y. Supp. 38, affirmed on opinion below, 178 N. Y. 558, 70 N. E. 1104; Murray v. Lardner, 2 Wall. 110, 17 L. Ed. 857; Cromwell v. County of Sac, supra; Daniel on Neg. Inst. (5th Ed.) § 1503. We hold, therefore, that both bond and coupons were negotiable, and that the defendants are bona fide holders for value.

It follows, therefore, that the determination of the Appellate Term and the judgment of the Municipal Court should be reversed, and a new trial granted in the Municipal Court, with costs to the appellants to abide the event. All concur, except CLARKE, J., who dissents.