ALEXANDER B. ENOCH, Plaintiff, *v.* JOHN R. BRANDON and Others, Defendants.

Supreme Court, Erie County, February 12, 1927.

**Bonds — action to recover for wrongful sale of bonds stolen from plaintiff and sold to defendants — clauses in mortgage and deed of trust, under which bonds were issued, reciting that 75 per cent of bondholders of company might sanction release of company from any part of principal or interest, did not render bonds non-negotiable — defendants, who took bonds for value, acquired good title thereto and are not liable to plaintiff.**

Clauses in a mortgage and deed of trust which provide that seventy-five per cent of the bondholders shall have power to sanction the release of the company and of the mortgaged premises from the whole or any part of principal and interest owing upon bonds issued thereunder, together with a power to sanction any modification of the rights of the bondholders against the company or its property, do not render said bonds non-negotiable, where said bonds, after reciting that they shall be treated as negotiable, contain an unqualified promise to pay a sum certain with interest at a fixed time and place, and the deed of trust provides that the company will pay the principal and interest of the bonds mentioned therein; said clauses must be regarded as the usual clauses in corporate mortgages giving power to release the company and mortgaged premises

from the lien of the principal and interest owing upon the bonds, and as referring to rights under the mortgage and deed of trust.

In this action to recover for the wrongful sale of three bonds issued under said mortgage and deed of trust, which have been stolen from plaintiff and sold to defendants, defendants cannot be made liable since, having purchased in good faith and for value, they acquired good title thereto.

ACTION to recover for the wrongful sale of three bonds of the Manitoba Power Company, which had been stolen from plaintiff and sold to defendants.

*Alfred H. Martin*, for the plaintiff.

*Penney, Persons, Blair & Nye* [*C. F. Blair* of counsel], for the defendant.

HORTON, J. Each bond provided: " This bond   \*   \*   \*   shall be treated as negotiable and all persons are invited by the company to act accordingly; " also: " This bond is   \*   \*   \*   entitled to the benefits of and subject to the provisions of a mortgage and deed of trust dated as of November 1, 1921." The deed of trust is very lengthy and provides, in section 91, among other things, that seventy-five per cent of the bondholders shall have " (d) Power to sanction the release of the Company and of the whole or part of the mortgaged premises from the whole or any part of the principal and interest owing upon the bonds, whether unconditionally or upon any condition " and " (f) Power to sanction any modification, alteration or compromise of the rights of the bondholders against the company or against its property, whether such rights shall arise under the mortgage and deed of trust or the bonds or otherwise."

It is claimed by the plaintiff that those provisions render the bonds not payable at a fixed or determinable time and that they make the amount uncertain; that, therefore, the bonds were non-negotiable in spite of the provision first above quoted, and that the defendants acquired no title.

The bonds themselves contain an unqualified promise to pay a sum certain, with interest, at a fixed time and place, The deed of trust referred to contains some seventy-five pages, with details as to almost every conceivable contingency. At section 66 it provides specifically that the remedies reserved to the bondholders, or the trustees therein, shall be in addition to every other remedy existing by law, and at section 67(c) the company covenants that it will pay the principal and interest of the bonds in the manner mentioned therein.

It is urged by the defendants that the two provisions of the deed of trust upon which the plaintiff relies [section 91(d) and (f) *supra*] should not be read by themselves but with the rest of the

context, and that when so read the two clauses do not purport to empower seventy-five per cent of the bondholders to waive generally a default of the obligor in payment of principal or interest so that an individual bondholder would be prevented from bringing an action at law, as distinguished from an action by the trustee in the event of default, but that they simply limit the use of the remedies by the trustee for the enforcement of the security in case of default. There is considerable force to this argument. (See *Hibbs* v. *Brown,* 112 App. Div. 214; affd., 190 N. Y. 167, in which HISCOCK, J., said (at p. 173): "We think that a consideration of all of the provisions of the trust indenture demonstrates that the clauses relied upon to sustain this contention of appellant only relate to and control procedure under the trust indenture itself for the purpose of enforcing payment of coupons and do not for any other purposes work or permit a postponement of the time of payment of the coupons or prevent a bondholder from enforcing his ordinary and general remedies at law for the collection of such obligations."

Section 91(d), which gives to seventy-five per cent of the bondholders " power to sanction the release of the company and of the whole or part of the mortgaged premises from the whole or any part of the principal and interest owing upon the bonds, whether unconditionally or upon any conditions," should not be construed to mean, as plaintiff contends, a release from the promise to pay the bonds, as that interpretation is contradictory to the express promises to pay found in the bonds and in other parts of the mortgage itself. It also makes the clause itself very clumsy because the section would then mean that seventy-five per cent of the bondholders would have power to sanction the release of the company and of the whole or any part of the mortgaged premises from *the promise to pay* the whole or any part of the principal and interest owing upon the bonds. Obviously, the mortgaged premises never promised to pay, and the clause must not be construed upon the assumption that they did, but rather as the usual release clause in corporate mortgages giving power to release the company and the mortgaged premises from the *lien* of the whole or any part of the principal or interest owing upon the bonds. Under such construction the clause does not affect the negotiability of the bonds.

Section 91(f), giving to seventy-five per cent of the bondholders the power to sanction any modification, alteration or compromise of the rights of the bondholders against the company or its property, whether under the mortgage and deed of trust or the bonds or otherwise, must also be construed as referring to rights under the mortgage and deed of trust, in spite of the words " or the bonds or other-

wise," because any construction giving seventy-five per cent of the bondholders power to modify, alter or compromise the rights of the bondholders to enforce the promise to pay contained in the bonds would be a flat contradiction of the terms of the bonds. In such case the terms of the bonds will prevail over the terms of the mortgage and deed of trust. (See *Rothschild* v. *Rio Grande W. R. Co.*, 84 Hun, 103; affd., on said opinion, 164 N. Y. 594.) In that case, although the bonds contained an absolute promise to pay definite sums on specific dates, as in the case at hand, it was contended that a provision of the accompanying trust deed restricting the right of bondholders to sue thereon in the event of non-payment at maturity, negatives the right of the bondholders to sue at law if the bonds were not paid at maturity. The court, in discussing this, said:

" Undoubtedly the bond and trust deed are to be construed together, but in case there is any ambiguity in any of the provisions of the mortgage, such ambiguity must be construed against the corporation. * * *

" But, on broader grounds, we think the contention of the defendant ought not to prevail. As before stated, we concede that the bonds and trust deed are to be construed together as forming the contract, in case they can be harmonized; but in case the bonds and deed contain wholly inconsistent provisions, those contained in the bonds must prevail over those contained in the deed. The provisions of the bonds meet the eye of the purchaser and are designed by the corporation to influence their sale, and they cannot be nullified by an inconsistent provision contained in the trust deed. As before stated, these bonds and coupons contain an absolute promise to pay definite sums on specific dates, which implies a right of action in case of failure, and if the eighth article is capable of the construction contended for by the corporation it is utterly inconsistent with the bonds, which in that case must prevail."

It seems to the court that the two clauses above quoted do not render the bonds non-negotiable. The defendants, therefore, as innocent purchasers for value, acquired good title.

As was stated by LAUGHLIN, J., in *Hibbs* v. *Brown* (112 App. Div. 214, 222), the case of *McClelland* v. *Norfolk Southern R. R. Co.* (110 N. Y. 469), relied on by the plaintiff in this action, was argued by both parties upon the assumption that the mortgage provided " for a postponement of the time of payment of both the principal sum and interest by the action of a majority of the bondholders; and the court proceeds to decide the case on that assumption." This case is, therefore, not decisive of the question.

Judgment for the defendants.