James T. McClelland, Appellant, v. The Norfolk Southern Railroad Company, Respondent.

Although, as a general rule, bonds issued by a corporation for the purpose of procuring loans and made payable to bearer, are negotiable, when such instruments contain special stipulations and their payment is subject to contingencies, not within the control of the holders, they are deprived thereby of the character of negotiable instruments, and are subject, in the hands of a transferee, to any defense existing thereto that would be available if they were still held by the original payee.

To be negotiable such an instrument must provide for the unconditional payment to a person or order, or bearer, of a certain sum of money, at a time capable of exact ascertainment.

The interest coupons attached to such a bond, where they refer to the bond, partake of the same character as the bond itself is; this character is not changed by cutting them off from the bond; and although an action may be maintainable upon the coupons without production of the bond, a recovery must be based upon the obligation contained in the bond, and cannot be had contrary thereto.

Where, therefore, in an action to recover the amount of certain interest coupons cut from, and on their face referring to, bonds issued by a railroad company, which bonds and the mortgage given to secure the same, contained conditions that the time of payment of principal and interest might be changed and postponed from time to time at the option of a majority of the holders of the series of bonds issued simultaneously with those from which the coupons were taken; *held*, that they were not negotiable instruments; that the holder was chargeable with notice of the terms of the bonds; and that if the payment of interest had been postponed in accordance with the condition of the bonds, until the period of extension had expired, an action at law could not be maintained upon the coupons, although plaintiff had not assented to the postponement.

Where, however, by the terms of the bonds and mortgage, " in case of default " in payment of interest, a majority of bondholders were authorized to waive the default and to instruct the mortgage trustees so to waive it, and it was expressly provided that no action on the part of the bondholders or trustees, " in case of any default, shall affect any subsequent default, or any right arising therefrom." *Held*, that the bondholders had no authority to anticipate and provide for a default in the payment of interest before it accrued; that every bond and coupon holder had the right to insist that the conditions of the exercise of the power should be exactly complied with; and that a written instruction by a majority of the bondholders to the trustees

to postpone the payment of interest for five years, was inoperative and no defense to an action upon coupons subsequently falling due.

As to whether, in such case, a waiver by a majority of the bondholders, after default in payment of interest, would affect an action then pending for the recovery of interest coupons, *quære.*

(Submitted June 25, 1888; decided October 2, 1888.)

APPEAL from judgment of the General Term of the Court of Common Pleas, in and for the city and county of New York, entered upon an order made May 13, 1886, which affirmed an order of the General Term of the City Court of said city, reversing a judgment in favor of plaintiff, entered upon a verdict, and which directed judgment absolute in favor of defendant.

The nature of the action and the material facts are stated in the opinion.

*Albert Gallup* for appellant. A coupon-holder can sue upon his coupons, detached from the bonds, the coupons having thus become complete negotiable instruments. (*Thompson* v. *County of Lee,* 3 Wall. 327; *Com. of Knox Co.* v. *Aspinwall,* 21 How. 539, 546.) The bondholder can relinquish the security of the mortgage and sue upon his bonds or coupons, which contain an unqualified promise to pay the principal and interest at a given time and place. (*Gilman* v. *Illinois & M. Tel. Co.,* 91 U. S. 603.) There is nothing in the New York statutes to forbid a suit upon the bond alone, (Code, § 1668; *Williamson* v. *Champlin,* 8 Paige, 70; *Suydam* v. *Battle,* 9 id. 294; 2 R. S. 191, 192, §§ 153, 156; *Savage* v. *Neil,* 44 N. Y. 298; Coote on Mort. [4th ed., 1880, London] 1029; *Attorney* v. *Winstanby,* 5 Bligh [N. S.] 144; *Ely* v. *Ely,* 6 Gray, 439; *Hale* v. *Rider,* 5 Cush. 27, 31; *Thayer* v. *Mann,* 19 Pick. 537; *Phila. & Balt. C. R. R. Co.* v. *Johnson,* 54 Penn. St. 127; *Spies* v. *Chi. & E. Ill. R. R. Co.,* 30 Fed. Rep. 397; *State of Florida* v. *Anderson,* 91 U. S. 679.) The common-law right of suing to judgment upon a written obligation, admitted to be valid is of too high a character to be taken

away by implication, especially if drawn from instruments other than that which is given in direct and positive acknowledgment of the debt. (29 Fed. Rep. 838; *Manning* v. *Norfolk S. R. R. Co.*, 1 Railway and C. L. J. 298.)

*Geo. W. Wingate* for respondent. A purchaser of coupons which state on their face that they are coupons upon certain bonds, is bound to examine these bonds and is bound by everything which is contained in them. (*McClure* v. *Township of Oxford*, 94 U. S. 429; *Caylus* v. *N. Y. K. & S. R. R. Co.*, 10 Hun, 295; 2 Daniels on Negot. Inst. 444; Jones on Railroads, § 318; *City* v. *Lamson*, 9 Wall. 477.) There is no higher equity in the holder of an interest coupon than in the holder of the bond from which it came. A court of equity will enjoin an action by the holder of a coupon, which if prosecuted to judgment and enforced by execution or attachment, would impair or destroy the fund to which all the bondholders have a right to resort for satisfaction of their debts. (*Pennock* v. *Col.*, 23 How. [U. S.] 130; *Burnham* v. *Bowen*, 111 U. S. 776; *Fosdick* v. *Schall*, 99 id. 252; *Hindekoper* v. *Locomotive Works*, 99 id. 258.)

Ruger, Ch. J. The complaint counts upon fourteen several interest coupons for the sum of $30 each, and alleges the liability of the defendant thereon, by virtue of its assumption of the obligations of the Elizabeth and Norfolk Railroad Company, who were the makers of such coupons.

The answer sets up as a defense that the time for the payment of the coupons for a period of five years, covering those in question, had, for a good consideration, been extended by a majority of the holders of bonds issued simultaneously with those from which such coupons had been detached, under the authority of provisions contained in the bond and mortgage given as security therefor. The case was submitted to the trial court upon an agreed statement of facts, from which, among other things, it appeared that the bonds, from which such coupons were detached, formed a series of nine hundred for $1,000 each,

with coupons attached, providing for the payment of interest semi-annually, issued by the Elizabeth City and Norfolk Railroad Company in 1880, and secured by a first mortgage upon its property and franchises, executed and delivered to trustees for such bondholders, and that the defendant had lawfully assumed the payment of the obligations of such company.

The coupons or interest warrants were in the following form :

" On the first day of (blank month and year) the Elizabeth City and Norfolk Railroad Company will pay to the bearer, at its financial agency in the city of New York, thirty dollars in gold ($30) being six months interest then due *upon its first mortgage bonds*, No.——

" W. G. DOMINICK,<br>" <i>Treasurer.</i>"

The bonds each contained a statement that " full payment of the principal and interest of  *  *  *  the said series of bonds is secured by a deed of trust or mortgage," upon the property and franchises of said railroad " upon the terms and conditions fully set forth in the said mortgage or deed of trust ; " and, also, that " this bond shall pass by delivery " and " in case default shall be made in the payment of any of the half yearly installments of interest on this bond,  *  *  * and if such interest shall remain unpaid for the period of six months,  *  *  *  the principal of this bond shall, at the option of the holder  *  *  *  become forthwith due and payable immediately *upon the terms and with the effect mentioned in said deed of trust or mortgage.*"

For the purpose of securing " the payment of said bonds and interest coupons," the company executed a mortgage. whereby it granted, bargained and sold to the trustees therein named all of the property " now held, or which may hereafter be acquired for or in connection with the construction, operation, maintenance, reparation or replacement of the said railroad or its several branches,  *  *  *  and also all rights, powers, privileges and franchises now held or hereafter acquired by the said party of the first part." By section 4 it further provided that " in case default shall be made in the payment of

any of the interest warrants hereby secured to be paid, *and such default continue for six months after payment shall have been duly demanded,*" then, at the option of said trustees, the whole principal sum secured to be paid shall become due and payable, and upon request of one half in interest of the holders of said bonds it is made the duty of said trustees to declare such principal sum due as aforesaid;" but, nevertheless, a majority in interest of said bondholders may, in case of *such default*, by an instrument in writing, signed by them, instruct the said trustees to declare said principal sum due, or waive their right so to do, upon such terms and conditions as such majority shall deem proper, or may annul or reverse the election made by the trustees, anything herein contained to the contrary notwithstanding; but the action of the trustees or bondholders in case of any default, *shall not affect any subsequent default on the part of the party of the first part, or impair any right resulting therefrom.*"

By section 7 it was further provided that "it is hereby declared and agreed   *   *   *   that it shall be the duty of, and it is hereby made obligatory upon the said trustees   *   *   *   to execute the powers of sale or entry hereby granted, or both, or to take appropriate proceedings at law or in equity to enforce the rights of bondholders under these presents upon requisition in writing, as hereinafter specified, to wit:   *   *   *   But in every case in which *the default* shall be in the payment of the money hereby secured, or any part thereof (in respect of any covenant or agreement in said bonds, or herein contained), such duty of the said trustees, and also their power to make elections in the premises, are hereby declared to be subject to the right and power of a majority in interest of the holders of the bonds hereby secured and then outstanding, to instruct the said trustees to waive *such default* or to enforce their rights thereunder and no action of the said trustees or bondholders in case of *any default* shall affect any subsequent default or any right arising therefrom."

Previous to the 1st day of September, 1884, more than four-

fifths of said bondholders had united, by signing an instrument in writing, in requesting the trustees to postpone the payment of any interest accruing on the bonds during the succeeding five years, to enable the company to use the funds thereby to be acquired, in the improvement of the track and rolling stock of the railroad, and to issue to the bondholders, in place of the postponed coupons, certificates for the amount of the same, payable at a future time with interest. The trustees assented to such request and immediately gave notice to the company to that effect, and also gave a formal extension upon all coupons which had matured up to the time of the trial after they became due, respectively. Relying upon such extension the defendant executed and delivered its certificates for the payment to the trustees of such postponed interest, and they were distributed to and received and and accepted by upwards of nine-tenths in amount of the bondholders, who thereupon delivered up their respective coupons to the trustees. The defendant also, upon the faith of such arrangement, proceeded to lay out and pledge the funds received and anticipated from this arrangement, in the improvement of its road and the extension of its facilities for the transportation of freight and passengers. Several questions arise upon this statement of facts, the most material of which we conceive to be those which refer to the meaning and intent of the provisions in the mortgage relating to the waiver by the trustees and bondholders of defaults in the payment of moneys secured thereby, and as to the negotiability of the coupons attached to said bonds.

In determining the character of the coupons, in respect to their negotiability, the court is required, we think, to examine each of the securities simultaneously executed by the defendant, viz., the mortgage, the bonds and coupons, for the purpose of discovering the intent and meaning of the contract thereby made. The reference in the coupons to the mortgage and bonds, and in the bonds to the terms and conditions of the mortgage, clearly, we think, charges the holders of both coupons, and bonds, with notice of the provisions contained in

each of such instruments. If, therefore, according to the plain intent and meaning of the provisions in the mortgage, it was designed to invest a majority of the bondholders thereunder with power, at their option, to waive defaults in the payment of moneys secured by said mortgage, we do not see how the claim that these coupons were negotiable instruments can be supported. If such coupons were negotiable instruments invested with the qualities pertaining to such securities, the mortgage and bonds to which they were attached when issued can not be resorted to, to qualify, limit or explain the agreement therein expressed. In that event their holders, having purchased them in good faith for value and without notice of any defense existing thereto, would be entitled to maintain an action thereon and recover according to well settled principles of commercial law.

If, however, these coupons containe notice to the holders of any facts or circumstances showing that the time of their payment was subject to a contingency over which the holder had no control, and which might postpone their payment indefinitely, then they could not be said to be *bona fide* holders thereof, as the negotiability of the paper would be thereby destroyed. It is undoubtedly the general rule that the bonds of railroad, manufacturing, municipal and other like corporations, payable to bearer, issued for the purpose of securing loans of money, are, in this country, deemed negotiable, and coupons thereto attached partake of the same character. (Rorer on Railroads, 250; *Evertson* v. *Bank of Newport*, 66 N. Y. 14; *Thompson* v. *Lee County*, 3 Wall. 327; *Commissioners* v. *Aspinwall*, 21 How. [U. S.] 539.) But when such instruments contain special stipulations and their payment is subject to contingencies not within the control of their holders, they are, by established rules, deprived of the character of negotiable instruments, and become exposed to any defense existing thereto, as between the original parties to the instrument. It is essential by such rules that such paper should provide for the unconditional payment to a person, or order, or bearer, of a certain sum of money at a time capable

of. exact ascertainment.    (3 R. S. [7th ed.] 2243, Daniels
Negotiable Instruments, §§ 27–104; *Evertson* v. *Bank of
Newport, supra; Frank* v. *Wessels,* 64 N. Y. 155; *Dins-
more* v. *Duncan,* 57 id. 580.)    It would seem, therefore, if
these coupons were subject to the condition that the time of
their payment could be changed, altered and postponed from
time to time at the option of a majority of the holders of the
series · of bonds simultaneously issued therewith, it would
deprive them of one of the essential characteristics of negoti-
able paper.

It was held in *McClure* v. *Township of Oxford* (94 U. S.
429), in an action upon coupons detached from the bonds of a
municipal corporation, which were substantially similar in form
to the coupons under consideration, that the bonds " carried
upon their face unmistakable evidence that the forms of law
under which they purported to have been issued had not been
complied with.    *   *   *    This suit was brought upon coupons
detached from the bonds purchased by the plaintiff in error,
before maturity, but, upon their face, they refer to the bonds,
and purport to be for the semi-annual interest accruing thereon.
This puts the purchaser upon inquiry. for the bonds, and
charges him with notice of all they contain."

*The City* v. *Lamson* (9 Wall. 478), was an action brought
upon coupons detached from the bonds of a municipal corpo-
ration, and it was there held that the action was not barred
by the lapse of time which would outlaw a simple contract
debt, but that there was " but one contract and that evidenced
by the bond, which covenanted to pay the bearer five hundred
dollars in twenty years, with semi-annual interest at the rate
of ten per cent per annum.    *   *   *    The coupon is simply
a mode agreed on between the parties for the convenience of
the holder in collecting the interest as it becomes due.    Their
great convenience and use in the interests of business and
commerce should commend them to the most favorable view
of the court; but even without this consideration, looking at
their terms, and in connection with the bond of which they
are a part, and which is referred to on their face, in our judg-

ment it would be a departure from the purpose for which they were issued, and from the intent of the parties to hold, when they are cut off from the bond for collection that the nature and character of the security changes and becomes a simple contract-debt instead of partaking of the nature of the higher security of the bond which exists for the same indebtedness." It was, therefore held that the coupons did not outlaw until the statutory time had run against the bond. The clear implication from the doctrines of this case seems to be that although an action may be maintained upon the coupons without the production of the bond, a recovery must be based upon the obligation contained in the bond, and that no recovery can be had contrary to the agreement therein expressed. (*Clark* v. *Iowa City*, 20 Wall. 583.)

If, therefore, the act of the trustees in postponing the payment of the interest becoming due on September 1, 1884, and the five years succeeding, was authorized by the provisions of the mortgage, it must follow that the holders of coupons are bound by their action and are not entitled to maintain actions at law upon such coupons.

The solution of this question requires an examination of the provisions of the mortgage. This case has been argued upon the assumption, by both parties, that the mortgage did provide for a postponement of the time of payment of both the principal sum, and interest, by the action of a majority of the bondholders. It is, however, claimed by the appellant that the bondholders could not anticipate and provide for a default in the payment of interest before such default had actually occurred.

We shall consider the case, therefore, upon the assumption that it contains authority for action upon the part of a majority of the bondholders to postpone the time for the payment of the interest coupons, and the only question arising thereon is whether, under a reasonable construction of the terms of the mortgage, this can be done before default has occurred.

This mortgage, in accordance with familiar rules, must be construed according to the intent of the parties in making

it, and that intent, if its language is plain and unambiguous, must be derived from an examination of the instrument itself. That contains the measure of the liability of the mortgagor, as well as a definition of the power, duties and rights of the trustees and bondholders named therein.

We can find nothing in this instrument which confers any power upon the trustees of their own motion, to waive defaults in the payment of interest, or to anticipate such defaults and postpone the time of payment thereof. That power, if conferred at all, is given to a majority of the bondholders, and the trustees have no authority to act in that respect except under the instructions of the bondholders.

The provisions of the mortgage relating to this subject are substantially contained in the fourth and seventh paragraphs hereinbefore recited. The conditions under which power is conferred upon the trustees and bondholders to waive defaults, contained in the fourth paragraph, relate exclusively to defaults already made, and which have continued to exist for the space of six months, after payment of such interest has been duly demanded. The trustees are then vested with the option of declaring the principal sum due and payable, and their action in respect thereto is made subject to review and correction by a majority of the bondholders; but the exercise of any power on the part of either trustees or bondholders is conditioned upon the existence of a default which has continued for the prescribed period.

It is quite clear that the defendant has not brought the case within the contingency provided for in this provision. It must, therefore, rely upon the provision contained in the seventh paragraph, if its contention can be sustained at all upon the facts of this case.

That paragraph relates wholly to the duties imposed upon the trustees, upon the contingencies arising under the mortgage, authorizing them to enforce the remedies therein provided, and the circumstances under which the performance of that duty may be compelled or waived by the bondholders. Certainly no duty can rest on the trustees to enforce the

mortgage until a default has occurred; and it is only in case of *such a default* and the omission of the trustees to perform " such duty " that the bondholders are authorized to act under the paragraph in question, and even in the event of any such action, it is expressly provided that " no action of the trustees or bondholders in case of any default shall affect any subsequent default or any right arising therefrom."

It is quite impossible to reconcile this provision with the claim that the bondholders can anticipate a default and provide for the operation of their action upon a future event. Such action is expressly prohibited by the terms of the agreement; and, in the face of such prohibition, such a power cannot be implied from other language of the instrument. The plain meaning of the provision contemplates action by the bondholders upon an existing condition of things, and the exercise of their judgment upon a situation which has already occurred. Not only the obligor, but each bond and coupon-holder is interested in the exercise of the powers referred to, and has the right to insist that the conditions of its exercise provided by the contract, so far as they are material, shall be fully and exactly complied with. Any other construction would place the rights of a minority at the discretion or caprice of a majority, and leave it practically powerless to avail itself of the security provided for it by the plain language of the contract. Assuming the right of bondholders, after a default has occurred, to waive defaults in the payment of interest and postpone the time of their payment, a question might arise as to the effect of such action upon suits then pending for the recovery of interest coupons; but that question is not now before us, and it would be improper to express any opinion thereon.

Action taken by a majority of bondholders in waiving default which has already occurred we have not considered, as the facts of the case do not present that question; but we are of the opinion that no action by the trustees or bondholders is authorized by the mortgage in anticipation of such default.

The action of the trustees in granting a formal extension

of time for the payment of the coupons in question, after default had been made thereon, would, we think, have barred an action upon coupons past due, except for the omission of a direction to do so given by a majority of the bondholders after the default occurred. We think this is made by the contract a condition precedent to the right of the trustees to postpone the time for the payment of interest.

The fact that the mortgage in question covers all of the property of the corporation, and must eventually be enforced for the benefit of its beneficiaries equally, would seem to subject the motives of the plaintiff in bringing this suit, to the imputation of attempting to extort payment of his coupons from the company, to the detriment of his associates; but this constitutes no defense to the action. The remedy of the bondholders against such an effort, if any there is, must be found in the exercise by the trustees of the power conferred upon them by the mortgage, to take possession of the property covered thereby, and use its proceeds for the common benefit of all bond and coupon-holders.

The judgments of the Common Pleas and General Term should, therefore, be reversed, and that of the trial court affirmed with costs.

All concur.

Judgment accordingly.