### HUDSON VALLEY RY. CO. v. O'CONNOR et al.

(Supreme Court, Appellate Division, Third Department. May 4, 1904.)

1. SALE OF BONDS—RIGHT TO COUPONS—CONTRACT.

Plaintiff contracted with a construction company to build an addition to its railroad, and to provide funds to pay therefor issued bonds, making a contract with defendants, whereby they agreed to purchase them for 80 per cent. of their par value, they agreeing that the bonds should be used as collateral for a loan to be obtained by the construction company, and the contract providing that each of defendants might withdraw his proportion of the bonds on paying and applying on the loan his contract price. The contract also provided that each of defendants should take and pay for, at the price of 80 per cent. of their par value, his proportion of the bonds, on or before a certain day, if called on therefor. They were not called on to take them till six months thereafter. The construction company had in the meantime given its note to a trust company for a loan, the bonds had been put up with the trust company as collateral, and the construction company had paid interest for a year on the note. *Held*, that in the absence of any agreement between plaintiff and defendants that the bonds should not be deemed issued till taken up by defendants, or that the bonds should not bear interest till paid for, or that payment of interest on the note should be considered payment of interest on the bonds, and though the trust company had detached the past-due coupons, defendants, on paying the contract price, on demand therefor were entitled to the past-due coupons as part of the bonds.

Appeal from Special Term, Warren County.

Action by the Hudson Valley Railway Company against Thomas O'Connor and others. From an order enjoining defendants during pendency of the action, they appeal. Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Thomas O'Connor, for appellants.
W. L. Kiley, for respondent.

HOUGHTON, J. The plaintiff desired to build an addition to its railway system, and entered into a contract with the Crescent Construction Company therefor. To provide funds the plaintiff issued from its treasury $500,000 in bonds, secured by a mortgage upon its property, and an underwriting syndicate was formed, to which the defendants were subscribers, by which the underwriters agreed to purchase said bonds at 80 per cent. of their par value. A bonus of stock was given with each bond, which, however, is immaterial to the

dispute in question. The underwriters agreed that the whole amount of stock and bonds should be used as collateral security for a loan to be obtained by the construction company. The contract provided that each subscriber might withdraw his proportion of the bonds and stock from such pledge upon paying and applying upon the loan his contract price. On the 18th of August, 1902, the construction company made and delivered its note to the Knickerbocker Trust Company for $400,000, at 5 per cent. interest, depositing as collateral security therefor the $500,000 of bonds and the stock to be given as bonus, and also the underwriting agreement. Payment of the note was guarantied by the plaintiff. The construction company paid the interest on this note to July 1, 1903, but no part of the principal. The underwriting agreement provided that each subscriber should take and pay for, at the price of 80 per cent. of the par value of said bonds, such number as he had subscribed for on or before February 1, 1903, if called upon by the syndicate manager therefor. This call upon the defendants was not made until the 1st of August, 1903. Later in that month the defendants paid to the Knickerbocker Trust Company the amount of their subscriptions and demanded their respective quotas of bonds and stock, which were delivered to them, claiming at the time that they paid the moneys by reason of the guaranty of their respective portions of the note, rather than upon their agreement to purchase. The trust company, without the knowledge of the defendants, and without their acquiescence, had detached, but not canceled, the coupons upon said bonds for the semiannual interest due January 1, and July 1, 1903. The defendants demanded these coupons as part of the bonds which they had purchased, or part of the security to which they were subrogated by payment, and they were delivered in pursuance of such demand. The defendants subsequently advertised these coupons for sale at public auction, whereupon this action was brought asking that said sale be restrained and that said coupons be surrendered to the plaintiff for cancellation. A preliminary injunction was obtained, and from the order continuing it during the pendency of the action this appeal is taken.

The theory upon which the plaintiff claims that the coupons are not subsisting obligations against it, and that they should therefore be canceled, is that, the construction company having paid the interest on the $400,000 note to July 1, 1903, the coupons must be considered as having been paid, or that the bonds, being treasury bonds, should not be deemed to be issued until they were taken and paid for by the several underwriters, and hence did not bear interest until they passed to the hands of the purchaser. If the record disclosed any reasonable probability that this was so, or cast any reasonable doubt upon the ownership of the coupons by the defendants, we should feel constrained to uphold the preliminary injunction as within the discretion of the Special Term; but we find no such doubt in the record before us. If the underwriting subscribers were guarantors of the note to the extent of their subscriptions, then, manifestly, upon paying the amounts which they had severally agreed thereon, they were entitled by subrogation to their proportion of the collateral security given for its payment, and this included the bonds and all

coupons belonging to them. We think this is also true if they be considered as purchasers under their underwriting agreement. The respondent's brief is emphatic in urging that the underwriters became purchasers in August, 1902, when their agreement was executed, and we concur in that view. That agreement, after reciting the reasons therefor, among which was the desire of the plaintiff to provide funds to meet its contract obligations with the construction company, states that each subscriber agrees to purchase the number of bonds set opposite his signature, at 80 per cent. of par value, and pay for the same in cash, and that the plaintiff has sold and agrees to deliver upon demand said bonds at said price. Then follows the provision whereby the subscribers agree that the bonds and stock may be pledged to secure a loan to the amount of $400,000, with the right of sale of the collateral and redemption of proportional parts upon each subscriber paying the amount of his subscription. Nothing is contained in the agreement that the price of the bonds shall be 80 per cent. of their par value *and accrued interest.* Nor is anything contained therein that the bonds shall not be deemed to be issued at the time of their deposit as collateral for said loan, or until the time each subscriber shall be called upon or shall pay for them. Nor is there any provision that payment of interest on the loan shall be deemed payment of interest on the bonds deposited. If the plaintiff desired to have it understood that payment of interest on the loan was to be deemed payment of interest on the bonds, or that the bonds should not be deemed to be issued and bear interest until actually taken up by the underwriting subscribers, those provisions should have been incorporated in the agreement. The underwriters were not parties to the agreement between the plaintiff and the construction company. For the purpose of making certain that funds would be provided to pay the construction company for its work, the underwriters agreed to purchase the bonds at a certain price, and also agreed that they might be pledged as collateral security to the extent of the $400,000 which the construction company might borrow. In addition, they pledged themselves that if the construction company should not pay the interest on this amount, then the bonds and stock should be held therefor as well as the principal. Payment of interest on the note, in the absence of any agreement, was not payment of any interest on the bonds.

It is not claimed that the coupons have been actually paid, but, rather, that they ought not to be paid. Whether they ought, or not, depends upon the agreement. Coupons are part of a bond, and are affected by its infirmities as well as endowed with its strength, and their character is not changed by detaching them from the bond. McClelland v. Norfolk Southern R. R. Co., 110 N. Y. 469, 18 N. E. 237, 1 L. R. A. 299, 6 Am. St. Rep. 397; Kelly v. Forty-Second Street R. R. Co., 37 App. Div. 500, 55 N. Y. Supp. 1096. Detaching the coupons from the bonds did not change their character, if done without authority from the purchasers, and they were still good as against the railroad company. Union Trust Co. v. Monticello & P. J. R. Co., 63 N. Y. 311, 20 Am. Rep. 541. Accrued interest goes with an interest-bearing obligation. It passes as an incident to the

main obligation unless expressly reserved.   Irrespective of their negotiable character, coupons are mere evidence of accruing interest.

Time was not the essence of the underwriting contract.   If that contract be deemed an executory one, still, when the underwriters paid the contract price, they were entitled to the delivery of the property contracted to be sold.   Payment was only the final act necessary to make the contract complete.   The bonds with their coupons attached had been delivered by the plaintiff to the trust company, and it could not prevent the delivery of them when the subscribers paid the stipulated price.

The complaint demands judgment restraining the threatened sale of the coupons, and the injunction must have been granted under the provisions of section 603 of the Code of Civil Procedure.   That section provides that it must appear by the complaint that the plaintiff is entitled to the relief demanded, and unless that does appear an injunction pendente lite cannot issue.   Heine v. Rohner, 29 App. Div. 239, 51 N. Y. Supp. 427.   The complaint does not state that it was agreed between the plaintiff and the underwriters that the bonds should not be deemed issued until taken up by the subscribers under the terms of their agreement, or that the bonds were not to bear interest until paid for, or that payment of interest on the note should be deemed payment of interest on the bonds.   Without some one of these allegations no cause of action is stated against these defendants. If the affidavits may be resorted to, and if the written agreement of the underwriters is not controlling and parol evidence may be given, still the supporting affidavits do not help the situation, for they are silent on these vital points.   In any aspect of the case, we see no escape from the conclusion that the plaintiff is not entitled to an injunction even during the pendency of the action.

The order should be reversed and injunction dissolved, with $10 costs and disbursements.   All concur.