WEINMAN et al. v. BLAKE & KNOWLES STEAM PUMP WORKS.

(Supreme Court, Appellate Division, First Department.   April 4, 1913.)

CORPORATIONS (§ 486*)—BONDS—CONSTRUCTION—EXTENT OF LIABILITY.

Defendant corporation executed a series of bonds, reciting that for value received it agreed to pay the bearer or registered holder $485 in gold coin on July 1, 1911, or on such earlier date as the principal sum should become payable in accordance with other provisions. Other provisions were indorsed on the bonds, one of which bound the company to pay to the trustee, for account of an alleged sinking fund on July 1, 1903, $81,625.50 on the 1st day of July, 1904, and each year thereafter $136,188, less a deduction sufficient to pay current interest on the debentures outstanding at the time, and that in each year, beginning with 1903, a certain number of bonds of the series should be drawn by lottery, and that the company should pay for those bonds $533.50. *Held*, that the payment to the trustee for the annual redemption of bonds did not constitute a sinking fund in fact, and that defendant was not bound to pay for the bonds last maturing in 1911 more than $485 and accrued interest.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 486.*]

Scott, J., dissenting.

Submission of controversy on agreed statement of facts by Rachel Weinman and another, as executrices of the estate of Moses Weinman, deceased, against the Blake & Knowles Steam Pump Works. Judgment for defendant.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Louis Marshall, of New York City, for plaintiffs.

Leventritt, Cook & Nathan, of New York City (David Leventritt, of New York City, of counsel), for defendant.

CLARKE, J. The defendant is a foreign corporation organized under the laws of the state of New Jersey. On July 1, 1903, it issued 1,883 eight-year, 6 per cent. gold debentures in the aggregate amount of $913,255. The form of debenture recited:

"Total authorized issue of debentures, $913,255. No. ——. $485. The Blake and Knowles Steam Pump Works * * * for value received acknowledge itself indebted to bearer or if registered, to the registered holder of this debenture in the sum of $485 in gold coin * * * and will, on the 1st day of July, 1911, or on such earlier date as the principal moneys hereby secured shall become payable, in accordance with the terms and subject to the conditions as to payments and otherwise hereinafter mentioned or referred to, pay to the bearer or, if registered, to the registered holder of this debenture for the time being, the sum of $485.00."

There was a provision for 6 per cent. interest payable semiannually, and that the payment of the principal and interest was charged on all its property.

"This debenture is issued upon and subject to the conditions as to redemption and all other conditions endorsed hereon, which shall be and be read as part of this debenture, and which the company covenants to observe and perform in every respect."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

There were certain provisions indorsed on each debenture of which the following may be noted:

"1. This debenture is one of a series, 1,883 debentures of like amount and tenor, numbered from 1 to 1,883 respectively, both inclusive, each for $485, issued or about to be issued by the company for an aggregate amount of $913,255. * * * 3. The debentures of this series shall rank pari passu as a first charge upon the property of the company as within defined, and without any preference or priority over one another and (except under the indenture of trust and mortgage hereinafter mentioned) as a floating security. * * * 5. The company shall on the 1st day of July, 1903, and the first day of July in every succeeding year, redeem the respective amounts of said debentures shown in the table following; that is to say:

| Year. | No. of Debentures to be Redeemed. |
| --- | --- |
| 1903 | 153 |
| 1904 | 161 |
| 1905 | 169 |
| 1906 | 179 |
| 1907 | 189 |
| 1908 | 199 |
| 1909 | 210 |
| 1910 | 221 |
| 1911 | 402 |

"The particular debentures to be redeemed on the 1st day of July, 1903, are to be ascertained by drawings made * . * * on that day * * * and the particular debentures to be redeemed subsequently to the 1st day of July, 1903, are to be ascertained by drawings to be made * * * in the preceding month of May * * * of which at least one week's previous notice shall be given by one advertisement in some newspaper published in the city of New York. And immediately after drawing the trustee shall notify the company of all the drawn bonds and the company shall forthwith notify the holders thereof. * * * Every debenture so drawn for redemption subsequent to July 1st, 1903, shall become redeemable and be redeemed by the company on the first day of July next succeeding such drawing, except in the case of debentures drawn in 1903, which shall be immediately paid at the price for each debenture (in addition to all accrued interest) of $533.50 in gold coin. * * * And every such debenture shall 'as and from such next succeeding first day of July cease to carry interest. . * * * The bearer * * * shall on the redemption thereof deliver the same up to the company together with all subsequent coupons."

The payment of these debentures was secured by a trust deed whereby the property of the defendant was granted and conveyed for the benefit of the various debenture holders.

It provided:

"To have and to hold the hereinbefore described premises, property, rights and franchises * * * in trust nevertheless for the equal pro rata benefit, use and security of all persons, firms and corporations who shall become or be the owners or lawful holders of any of the said debentures intended to be secured hereby as aforesaid, or any of the coupons pertaining thereto, without preference or distinction of one debenture over any other debenture or bonds by reason of the priority in the time of issue or date of maturity thereof or otherwise, and for the uses and purposes and with the powers and authorities and subject to the conditions hereinafter set forth."

Article 12 of the conditions provided:

"The company hereby expressly covenants and agrees to redeem and discharge the whole of said issue of debentures at the price and in the manner hereinafter appearing by paying on the first day of July, 1903, to the trustee for account of the sinking fund the sum of $81,625.50, and on the

first day of July, 1904, and on the first day of July on each succeeding year to the trustee for account of the sinking fund provided for in the said debentures, the amount of $136,188, deducting, however, therefrom such amount payable on and after July first, 1904, as shall be necessary in order to pay the current interest upon the debentures unredeemed and outstanding for the time being. The respective amount of debentures to be redeemed in each year are shown in the table following; that is to say."

Here follows the same table indorsed on the debenture and the same provisions in regard to drawings heretofore quoted.

In article 15 the company covenanted with the trustee:

"2. During the continuance of this security the company will pay all the principal moneys and interest becoming due in respect of the debentures respectively and will observe and perform the several conditions endorsed thereon respectively."

All of the aforesaid 1,883 debentures came into the hands of various bona fide holders for value, and the defendant on July 1st of each of the years, beginning July 1, 1903, to and including July 1, 1910, redeemed the number of said debentures set forth in the fifth condition indorsed on the debentures and specified in article 12 of the deed of trust, paying therefor to the holders of the several debentures drawn for redemption as provided the sum of $533.50 for each debenture so drawn. On July 1, 1911, there remained outstanding 402 debentures and the holders of a number of such debentures, including plaintiff's testator, demanded $533.50 for each of said outstanding debentures. The defendant insisted that it was not bound to pay in excess of $485 for each of said debentures and paid that amount with the understanding that, if it were determined that it was legally bound to pay the sum of $533.50 upon each of said debentures, it would do so. This controversy is submitted as to whether the defendant is called upon to pay the difference between $533.50 and $485, or $48.-50 for each debenture.

The plaintiffs base their claim mainly upon the provisions in regard to the so-called sinking fund. Upon analysis it is clear there is no "sinking fund" provided for. That descriptive term is misused. There was no sum of money placed in the treasury from time to time which should remain therein and by accumulation provide for the ultimate payment of the debentures. It was merely an annual amount which the company was prepared to pay by way of interest on its debentures and for the payment of a certain amount thereof to be drawn in the prescribed way. Having determined that it would pay $136,188 a year, the company then ascertained how many debentures could be redeemed each year, after the payment of the interest on all then outstanding with that amount, and having ascertained that quotient it provided that the number of the debentures to be drawn and redeemed should be 153, 161, 169, 179, 189, 199, 210, 221. These irregular numbers were determined upon solely as a matter of arithmetic.

Upon their face the debentures declared that at the end of the eight years for which they ran the company would pay upon presentation $485. That was the agreement; that was the promise. To that, and only that, the company was bound at the end of the eight years. For the purpose of stimulating the sale the company agreed to call in by

lottery a certain specified number of debentures each year and to pay the amount of $533.50 therefor, when so drawn, called and redeemed.

If the plaintiffs are right and $533.50 was to be paid for each debenture whether drawn by this lottery or when finally due, we can discover no reason, nor is any suggested, why the face of the debenture was not made for $533.50, instead of $485. It is clear that this hope of an earlier payment upon an increased amount was held out solely to make this an attractive proposition.

Interpreting these instruments, we hold that the proposal by the company was to pay to those whose debentures happened to be drawn before maturity an increased price. As between all these debentures there was to be equality. That is, each had an equal chance to be drawn. Each debenture drawn was to receive an equal amount, $533.-50; and each debenture undrawn was to be paid an equal amount, to wit, $485, at the date of maturity. This construction gives effect to all of the terms of the debentures and the trust deed—that contended for by the plaintiffs ignores several of the most important. The moneys used to pay the drawn debentures as well as the undrawn came equally from the current funds of the company. There was no sinking fund in any true sense, and, if there were, it entirely failed to make provision for the undrawn debentures.

It follows that judgment on the submission should be entered for the defendant, without costs to either party.

INGRAHAM, P. J., and McLAUGHLIN and LAUGHLIN, JJ., concur.

SCOTT, J. I dissent. Reading the debentures, the indorsement upon each, and the deed of trust together as they should be read (McClelland v. Norfolk Southern R. R. Co., 110 N. Y. 469, 18 N. E. 237, 1 L. R. A. 299, 6 Am. St. Rep. 397; Batchelder v. Council Grove Water Co., 131 N. Y. 42, 29 N. E. 801), I am of the opinion that the defendant's obligation was to pay all of the debentures as they should be redeemable at the price of $533.50. In each of the schedules contained in any of these documents the 402 debentures falling due in 1911 are included among those to be "redeemed," so that no distinction is made, so far as concerns the amount payable, between the indentures which are to be paid and those which are to be "redeemed."

That all were to be redeemed at the same figure seems to be assured by the provisions indorsed upon each that "the debentures of this series shall rank pari passu as a first charge upon the property of the company as within defined, and without any preference or priority over one another." Why the company should have issued its obligations apparently for $485 at the same time agreeing to pay them off at the rate of $533.50 is no more evident than it is why it should have referred to a sinking fund which was no sinking fund at all. It may have been to enable it to make a more favorable showing as to its apparent liabilities than the fact warranted. But speculation on that subject is idle. The point is that it undertook to treat all of its debenture holders alike. In my opinion the plaintiff is entitled to judgment.