## METROPOLITAN LIFE INS. CO. v. COHEN.

### No. 190.

Circuit Court of Appeals, Second Circuit.
April 4, 1938.

Marvelle C. Webber and Christopher A. Webber, both of Rutland, Vt., for appellant.

Frank E. Barber and Ernest W. Gibson, Jr., both of Brattleboro, Vt., and Donald Harrington, of Manchester Center, Vt. (Frank Elliott Barber, Jr., of Brattleboro, Vt., of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Appellee sued as beneficiary upon a limited payment life insurance policy insuring the life of her husband. The application for insurance, parts (a) and (b), were made part of the contract and copies were attached to the policy. Cohen signed Part (a) June 18, 1936, and Part (b) June 19, 1936. After signing Part (b), he paid $32.15 to the appellant's local agent and was given a binding receipt dated June 19, 1936, which, in addition to acknowledging receipt of the first premium, provided: "If this sum is equal to the full first premium on the policy applied for and if such application is approved at the Company's Home Office for the Class, Plan and Amount of Insurance therein applied for, then the insurance applied for shall be in force from this date, but otherwise no insurance shall be in force under said application unless and until a policy has been issued and delivered * * *."

The application was approved by the home office in New York June 26, 1936, and stamped "issue ordinary." The policy was issued at the home office in New York dated July 1, 1936, but received at the branch office in Rutland, Vt., on the morning of June 30th. That day it was delivered at the insured's residence by the soliciting agent and turned over to the appellee. After handing over the policy to the appellee, the agent was informed that the insured was dead, having died June 30, 1936, at 2 o'clock in the morning. The proofs of death stated the cause to be "coronary thrombosis and Buerger's disease" and that the insured had received previous medical treatment.

Part (b) of the application for insurance contained answers to the following questions, among others:

"Q. Have you ever been an inmate of, or have you ever received treatment at * * * hospital, sanitarium or cure. If yes, give date, duration, name of ailment and name of institution? A. No.

"Q. Have you ever suffered from any ailment or disease of (b) the heart or lungs? A. No.

"Q. Have you consulted a physician for any ailment or disease not included in your above answers? A. No.

"Q. What physician or physicians, if any, not named above, have you consulted or been treated by, within the last five years and for what illness or ailment? If none, so state. A. None."

It was not disputed that the insured had been treated at a hospital and treated by three doctors within a period of one and a half years previous to the making of this application. One of his doctors diagnosed his case as "Angina pectoris," and two others treated him for "Buerger's disease" and for a "coronary thrombosis" in the spring of 1936. He had been warned that his condition was serious before he applied for this insurance, and eight days before he signed Part (a) of the application he was told that he had suffered an attack of coronary thrombosis which was serious and it was possible the same thing might happen again. These facts were not admitted or disclosed in any way in his answers to Part (b) of the application.

Appellee attempted to rebut these representations by showing that the examining physician did not read the questions in Part (b) to the insured and that the insured did not answer the several questions; that the answers were copied from a previous application for insurance made in 1934 which was issued by appellant; and that the doctor told the insured he need not read the application and to sign it without reading.

The answers to the questions referred to were false representations of material

facts and should avoid the policy for it constituted a fraud. The questions sought to disclose previous treatment by physicians and in hospitals, and insured's answers were misrepresentations as to these material facts. It is conceded that the insured signed the application and it is conceded that he suffered from a serious heart ailment and obesity. He had been treated for angina pectoris which is a symptom of cardiovascular disease, coronary thrombosis, and Buerger's disease, in which the opening of an artery is narrowed, resulting in insufficient blood supply, vascular disturbances, and degeneration. Having been treated for these diseases and advised as to what he was suffering from during the previous year, he should have answered the questions truthfully.

■ The contract is governed by the laws of the State of New York. It became binding according to its terms when approved at the company's home office in New York. The last essential act to the meeting of the minds was the approval of the application in New York, the first premium having been paid. Mutual Life Ins. Co. v. Cohen, 179 U.S. 262, 21 S. Ct. 106, 45 L.Ed. 181; Lincoln Natl. Ins. Co. v. Hammer, 8 Cir., 41 F.2d 12; Wastun v. Lincoln Natl. Life Ins. Co., 8 Cir., 12 F.2d 422; Arcuri v. Prudential Ins. Co., 248 App.Div. 501, 290 N.Y.S. 567. Under the laws of New York, the insured was bound by his answers in Part (b) of the application. Section 58 of the New York Insurance Law, Consol.Laws, c. 28, provides that the policy contains the entire contract. All statements purporting to be made by the insured, in the absence of fraud, are deemed representations and not warranties. The statute reads: "Any waiver of the provisions of this section shall be void." The representations made by the insured were material to the risk and their falsity avoids the contract. Axelroad v. Met. Life Ins. Co., 267 N.Y. 437, 196 N.E. 388; Minsker v. John Hancock Mutual Life Ins. Co., 254 N.Y. 333, 173 N.E. 4, 81 A.L.R. 829.

In John Hancock Mutual Life Ins. Co. v. Yates, 299 U.S. 178, 57 S.Ct. 129, 81 L.Ed. 106, a policy was applied for, issued, and delivered in New York. After death of the insured, the beneficiary moved to Georgia and brought an action in the state court there. The Supreme Court held that under the law of New York a false answer in the application as to prior medical treatment was a material misrepresentation which avoids the policy; that even though the truthful answer was really given to the agent and not recorded, it was without legal significance because the statute enacts a rule of substantive law which became a term of the contract as much so as the amount of the premium to be paid or the time for its payment; and that the declaration of the statute as construed and applied by the highest court of New York, that the false answer involved was a material misrepresentation which avoids the policy, determines the substantive rights of the parties as fully as if a provision to that effect had been embodied in the policy. See Keck v. Metropolitan Life Ins. Co., 238 App.Div. 538, 264 N.Y.S. 892, affirmed 264 N.Y. 422, 191 N.E. 495.

In N. Y. Life Insurance Co. v. Fletcher, 117 U.S. 519, 6 S.Ct. 837, 841, 29 L.Ed. 934, where suit was brought upon a life insurance policy, the answer of the defendant company set up statements in the application made by the insured to the effect that he had never been seriously ill and had no regular medical attendant, when in fact he had been afflicted with disease, had been under medical treatment for it prior to the application and died from it. The plaintiff replied that the insured had told the agent of his state of health including treatment, etc., and had given truthful answers which the defendant's agent pretended to take down but which were not read over to the insured and which the insured signed without reading. It was proved at the trial that the assured had been treated for diabetes previous to his application for insurance. Plaintiff's witness was allowed to testify over objection that the insured had given these truthful statements as to his diseases. The court, however, said: "The assured was placed in the position of making false representations in order to secure a valuable contract, which, upon a truthful report of his condition, could not have been obtained. By them the company was imposed upon and induced to enter into the contract. In such a case, assuming that both parties acted in good faith, justice would require that the contract be canceled and the premiums returned."

■ It was held a duty of the insured to read the application and that he was presumed to have done so and was informed of the limitations therein expressed. The principle of that case is applicable here, even

though there is a conflict as to whether the insured had been told by the agent it was unnecessary to read the application or that the agent was using information from a previous application in 1934.

Mr. Cohen is presumed to have read the application and to have been cognizant of the answers he made. It was the duty of the trial judge to have directed a verdict for the defendant.

Judgment reversed.