**DUNHAM v. OMAHA & C. B. ST. RY. CO.**

District Court, S. D. New York.
Nov. 10, 1938.

Frederic G. Dunham, of New York City, for plaintiff.

White & Case, of New York City (J. Adam Murphy and William J. Killoran, both of New York City, of counsel), for defendant.

GALSTON, District Judge.

On December 1, 1902, the defendant railway company authorized the issue of certain negotiable coupon bonds, payable to bearer, known as its First Consolidated Mortgage Gold Bonds, for an aggregate principal sum not to exceed $10,000,000.

The plaintiff became the owner of twenty of such bonds. These bonds were to be paid at maturity at the office of the agent of the defendant in the City of New York on January 1, 1928; but at various times subsequent to January 1, 1928, the date of payment of the bonds was extended by agreements with the bondholders to the first day of January, 1937. To all such agreements of extension the plaintiff or her assignors, as the owners of her bonds, duly assented. When the indebtedness became payable by the defendant on January 1, 1937, the defendant failed to provide for the payment of the bonds.

As security for payment of the bonds the defendant had executed a first consolidated mortgage. It is the position of the defendant that by explicit reference in the recitals of the bonds, the terms and conditions of the mortgage were incorporated and made part of the bonds.

An extension agreement entered into as of October 1, 1936, between the defendant and the Guarantee Trust Company of New York, the trustee of defendant's mortgage, and bondholders acting through a committee, purported to waive all defaults of defendant under the bonds and the indenture securing the same, and to extend the maturity date of the bonds to January 1, 1947. Holders of more than 92% of the defendant's bonds became parties to and accepted the extension and modification of the third supplemental indenture by presenting and having a legend affixed to their respective bonds reciting their acceptance of the terms and provisions of the aforesaid extension and modification agreement, dated as of October 1, 1936. The plaintiff did not assent to this agreement, nor did she deposit her bonds pursuant to the terms of the agreement.

The plaintiff's position is that no reference in the bonds to the mortgage subjects them to any provisions in the mortgage and accordingly brings this action on her bonds without recourse to the security of the mortgage.

The bond is not in an unusual form. In brief it recites that for value received the defendant promises to pay the principal on January 1, 1928, and interest at the rate of five per cent. per annum, semi-annually, on the 1st day of January and July of each year. Standing alone that, of course, would constitute an absolute unconditional obligation; and a default on the part of the defendant would enable the holder of the bond to sue on the bond without regard to the mortgage. However, there are two references in the bond to that instrument. The passages are:

"In case of default in the payment of this bond, or of the interest accruing thereon, or otherwise, such consequences shall ensue as are provided in the mortgage securing the payment of the same hereinafter mentioned. * * *

"The payment of each and all of said bonds, with interest coupons attached thereto, according to their tenor and effect, is equally secured without preference, priority or distinction by a mortgage bearing even date herewith * * * to which mortgage reference is made for a description of the properties mortgaged and pledged and the nature and extent of the security and the rights of the holders of said bonds and coupons under the same, and the terms and conditions upon which such bonds are issued and secured."

The latter quoted passage presents no difficulty, for similar provisions on the face of a bond have not infrequently been judicially interpreted. The leading case in New York is Enoch v. Brandon, 249 N.Y. 263, 164 N.E. 45. In that case there had been an issue of bonds "all equally secured by and entitled to the benefits and subject to the provisions" of the trust mortgage, "to which reference is hereby made for a description of the property mortgaged and pledged, the nature and extent of the security, the rights of the holders of the bonds with respect thereto, the manner in which notice may be given to such holders, and the terms and conditions upon which said bonds are issued and secured." [Page 46.]

That language is in all respects similar in meaning to the second clause quoted above. After distinguishing McClelland v. Norfolk Southern R. Co., 110 N.Y. 469, 18 N.E. 237, 1 L.R.A. 299, 6 Am.St.Rep. 397, in which it was held that the bond itself showed that the promise to pay was conditional on the terms mentioned in the trust mortgage, it was stated: "We hold that here there is no modification of the promise to pay, made in explicit terms. The provisions all have to do with the trust mortgage. They refer to the rights conferred by it upon the bondholders and limit and explain those rights. They are so linked together as to indicate that the obligor was speaking solely of the security. A purchaser, scanning the bonds, would

have the same thought. It would never occur to him that when November 1, 1941, arrived, because of something contained in the mortgage he might be unable to collect the amount due him. He would interpret the statement that the bonds were secured by, and entitled to the benefits and subject to the provisions of, the mortgage, as meaning that a foreclosure or other relief might be had thereunder only subject to its provisions. * * * Again, it would mean to him, as it means to us, that only by turning to the mortgage might he discover the precise nature of the lien he is to obtain."

Lidgerwood v. Hale & Kilburn Corporation, D.C., 47 F.2d 318, cited by the defendant, in which the provisions of the trust agreement were held incorporated by reference into the corporation's notes, did nevertheless recognize the distinction between a mere promissory note unsecured and a bond secured by a mortgage, for referring to Enoch v. Brandon, supra, Judge Patterson wrote [page 320]: "This is not a case where the reference to an indenture was such as to lead the holder to believe that the indenture simply added more rights to what he had on the face of the note, without in any way hinting that there might be something in the indenture to his detriment, as in Enoch v. Brandon, 249 N.Y. 263, 164 N.E. 45. There the bond referred to the indenture merely for matters relating to the security."

In Cunningham v. Pressed Steel Car Co., 238 App.Div. 624, 265 N.Y.S. 256, the following provision appeared in the bond [page 258]: "This bond is one of an issue of bonds aggregating Six Million· ($6,000,-000.00) Dollars * * * to which Indenture reference is hereby made for a statement of the rights of the holders of said bonds."

It was there contended by the defendant, as is contended here, that the provisions in the trust indenture were incorporated into the contract and that accordingly no holder of any bond had the right to institute suit for the enforcement of any of its terms without first complying with the provisions of the mortgage in respect to notice to the trustee and failure to show the requisite number of bondholders collectively requesting the trustee to act. It was said: "If there was to be a restriction upon defendant's obligation to pay at maturity, then the bondholder was entitled to receive notice thereof in reasonably clear language expressed on the face of the bond. The mere reference to the indenture for a statement of the rights of the holders is not enough to take away by implication, drawn from another instrument, plaintiff's right to sue upon defendant's positive acknowledgment of and unconditional promise to pay the debt."

The law of New York governs the construction and effect of the bond in question in this suit (Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487), for the bonds provide that payment is to be made at the agency of the defendant in the City of New York, that the payment is secured by a mortgage executed and delivered by · the defendant to the Morton Trust Company, the trustee, of New York City, the bond is not to pass by delivery unless registered in books to be kept at the agency in the City of New York and the bond shall not be obligatory for any purpose until it has been authenticated by the certificate of trustee. It is provided in the mortgage that the duties of the trustee to the Railway Company and to the holders of the bonds shall be determined solely by the provisions of the instrument and by the laws of the State of New York.

The obligation of a contract undoubtedly depends· upon the law under which it is made. Northwestern Mutual Life Insurance Co. v. McCue, 223 U.S. 234, 32 S.Ct. 220, 56 L.Ed. 419, 38 L.R.A.,N.S., 57, and a contract is made in that place where the final act is done which makes the provisions of the agreement binding. Metropolitan Life Insurance Co. v. Cohen, 4 Cir., 96 F.2d 66.

Without evidence as to the place where the bonds were originally delivered it must be assumed that inasmuch as the trustee has its office in New York, acknowledged the execution of the mortgage in New York, and since the bonds could not become effective until authentication by the trustee whose offices are in New York, that the final act in the contractual relationship was apparently performed in New York. That the parties had in mind a contract to be governed by New York law, is clear from the passage in the mortgage hereinbefore quoted.

The provision of the bond which gives some difficulty is the sentence reading: "In case of default in the payment of this bond, or of the interest accruing thereon, or otherwise, such consequences shall ensue as are provided in the mortgage se-

290

curing the payment of the same hereinafter mentioned."

It is argued by the plaintiff that the consequences referred to as "provided in the mortgage" are not the only consequences to ensue from default in payment of the interest or principal of the bonds.

■ I cannot read that meaning into the limitation. It would seem that anyone giving reasonable consideration to the language of the bond must necessarily give heed to the conditions stated. The purchaser of the bond cannot disregard the limitation that "such consequences shall ensue as are provided in the mortgage securing the payment of the same hereinafter mentioned." Certainly he is not justified in reading into it a meaning which in effect would destroy its object.

Language almost similar is found in the bond considered in Batchelder v. Council Grove Water Co., 131 N.Y. 42, 29 N. E. 801: "In case of default in the payment of any of the interest coupons attached to this bond in the manner provided in the trust-deed and mortgage hereinafter mentioned, then, and in that case, the principal sum of this bond shall become due in the manner and with the effect provided in the said trust-deed or mortgage."

Default occurred in the payment of the coupons and before the due date of the principal, and the plaintiff claimed that the bonds became absolutely due and entitled him to enforce payment in any way available to the holder of a past due obligation, but the court held: "This claim would, undoubtedly, be sustainable, provided the bond had stopped with the words, 'the principal sum shall become due;' but it did not, in fact, stop there, but continued with the following qualification of the previous sentence: 'in the manner and with the effect provided in the said trust-deed or mortgage.'" And again: "We think that the reasonable construction of the contract requires us to hold that the principal sum of the mortgage debt, upon the failure to pay interest thereon, was not intended to be made payable except in the manner specifically provided by the terms of the mortgage. McClelland v. Norfolk Southern R. Co., 110 N.Y. 469, 18 N.E. 237 [1 L.R.A. 299, 6 Am.St.Rep. 397]. Any other holding would authorize the individual bondholders to pursue the company and strip it of its present funds and rights of action, and destroy its capacity to carry on its business, and thereby protect its creditors. It is not reasonable to suppose that the bondholders, as a class, intended to make a contract which should lead to that result."

■ Following the reasoning of Judge Ruger in that case, it can reasonably be argued in the matter at bar that had the parties intended to leave the right of action in the bondholder on default of either principal or interest, there was no necessity for adding the limitant phrase "such consequences shall ensue as are provided in the mortgage." There can be no doubt that the limitant phrase was designedly employed. It was necessary if the parties intended to restrict the right of bondholders to bring suits on default in the payment of the bond or of the interest; since under the New York law, as in Enoch v. Brandon, supra, the security clause in the bond refers only to rights in respect to the security defined in the mortgage.

The opinion in Batchelder v. Council Grove Water Co. cites McClelland v. Norfolk Southern R. Co., 110 N.Y. 469, 18 N.E. 237, 1 L.R.A. 299, 6 Am.St.Rep. 397. In that case the bond forming the subject matter of the action contained a clause also similar to that now under discussion. The bonds read [page 238]: "in case default shall be made in the payment of any of the half-yearly installments of interest on this bond, * * * the principal of this bond shall, at the option of the holder, * * * become forthwith due and payable immediately upon the terms and with the effect mentioned in said deed of trust or mortgage."

The case is of interest because in the opinion Judge Ruger stated: "The reference in the coupons to the mortgage and bonds, and in the bonds to the terms and conditions of the mortgage, clearly, we think, charges the holders of both coupons and bonds with notice of the provisions contained in each of such instruments."

In Mitchell v. Madison Avenue Offices, Inc., 147 Misc. 149, 263 N.Y.S. 442, the bond recited that, in case of default, "the principal of this bond may be declared and become due and payable on the conditions and in the manner and at the time provided in said Second Mortgage Trust Agreement or Indenture of Mortgage." [Page 443.] It was held that the holder of the mortgage was bound by the provision of the trust agreement limiting the right of bondholders to sue.

But the plaintiff contends that the mortgage provisions, even if held to be incorporated in the bond, would not bar this action. It is asserted that Sec. 5 of Article Three of the mortgage is inapplicable. That section reads in part: "Every holder of the bonds secured hereby accepts the same subject to the express understanding * * * that every right of action, whether at law or in equity, upon or under this instrument, is vested exclusively in the Trustee; and under no circumstances shall the holder of any bond * * * have any right to institute any action at law upon any coupon or coupons, or otherwise, or any suit or proceedings in equity, or otherwise, for the purpose of enforcing any payment, covenant or remedy herein or in said bonds or coupons contained * * * except in case of refusal on the part of the Trustee to perform any duty imposed on it by this instrument * * * after the expiration of three months after demand by the holder or holders of twenty-five per cent. in amount of the bonds secured" etc.

Plaintiff contends that this section confers an exclusive power in the trustee as to every right of action arising under the instrument, i. e., the mortgage; and that there are withheld from the bondholders the right to institute an action at law upon coupons, or to pursue any contractual remedy under the mortgage, or from instituting any suit or proceeding in equity for the purpose of enforcing the mortgage, the bonds, or the coupons, but that there is not withheld the right of action at law upon their bonds. In sum, the plaintiff's position is, under this section of the mortgage, that the right to institute actions at law upon the bonds is neither conferred upon the trustee nor taken away from the bondholders.

■ The contention seems sound. Clearly the holder of any bond or coupon is barred from bringing any action at law or any suit or proceeding in equity "upon any coupon or coupons * * * for the purpose of enforcing any payment, covenant or remedy herein or in said bonds or coupons contained". Had the intention been to foreclose the holder of a bond from instituting any action on the bond it would have been a simple matter to say so and the aforesaid clause would probably then have read: And under no circumstances shall the holder of any bond or coupon * * * have any right to institute any

action at law upon *any bond or bonds or * * * for the purpose of enforcing any payment, etc.

■ In effect then the no-action provision in the mortgage would have to be modified substantially as thus indicated to justify the express significance of the words employed. As was said in Manning v. Norfolk Southern R. Co., C.C., 29 F. 838, 839: "The common-law right of suing to judgment upon a written obligation admitted to be valid is of too high a character to be taken away by implications, especially if these are drawn from instruments other than that which is given in direct and positive acknowledgment of the debt."

It would seem, therefore, that the so called no-action provision of the mortgage does not restrict the holder of a bond from bringing an action at law for the payment of the principal on the bond on default thereof.

■ There remains to be considered in that connection, however, the following provision of Sec. 5 of Article Three. The passage reads: "In every case of default in the payment of the money secured * * * or in respect of any covenant * * * in said bonds or coupons or herein contained, the duty of the said Trustee and also its power to act in the premises, are hereby declared to be subject to the right and power of the majority in interest of the holders of the bonds hereby secured * * * to require the said Trustee to waive such default * * * but no action of the said Trustee or bondholders in case of any default shall affect any subsequent default or any right arising therefrom." This clause means that in case of a default the bondholders have the right to control the trustee—but only in the performance of its duties or the exercise of its powers under the mortgage. It has already appeared that the trustee has neither the duty nor the power to bring an action at law on the bonds.

Nor is it at all clear, as contended by the defendant, that any provision in the mortgage empowers the majority bondholders to waive the defendant's default in the payment of plaintiff's bonds at maturity or to extend the time for the payment and reduce the rate of interest. There is no doubt that the holders of ninety-two per cent. of the outstanding bonds could waive the defendant's default and enter into a modification of their contract with the defendant, and indeed in such a

way as to make it impossible for the non-assenting eight per cent. of the bondholders to avail themselves of the security of the mortgage; but in the absence of a specific express authority conferred in the mortgage upon the majority bondholders or the trustee, no action of theirs can bar the plaintiff from pursuing her rights at law, if she is content to forego the security of the mortgage.

■ The defendant's position is clouded in another respect. The extension and modification of the third supplemental indenture which purported to extend the maturity of the bonds from January 1, 1937, to January 1, 1947, apparently executed December 11, 1936, was dated as of October 1, 1936, and recites in paragraph Eleventh that: "Pursuant to Sec. 5 of Article Three of the First Mortgage, the holders of the Bonds do hereby waive any and all defaults existing under the First Mortgage, the Extension Agreement and Supplemental Indenture, dated as of December 1, 1928, and/or the Second Extension Agreement and Supplemental Indenture, dated as of August 15, 1930, and/or the Third Extension Agreement and Supplemental Indenture, dated as of April 1, 1932, and the consequences thereof; do hereby waive any and all defaults which may result from the failure of the corporation to pay interest at any fixed rate * * *; do hereby release and relinquish any and all rights and remedies accruing on account of any such default or defaults; and do hereby require the Trustee to waive any such default * * *. The bondholders hereby irrevocably constitute and appoint The New York Trust Company as their agent * * * to execute and deliver to the Trustee * * * as and when any such future default or defaults * * * shall occur, a written instrument directing the Trustee to waive any such defaults."

Now the record does not disclose any existing default as of October 1, 1936, or December 11, 1936; nor is there any proof of any action by the trustee, waiving the default in the payment of these bonds on January 1, 1937. On January 18, 1937, the bondholders' committee by letter requested the trustee to waive all defaults "with reference to the non-payment of interest and to the non-payment of the principal of the bonded indebtedness." Again on March 10, 1937, the bondholders' committee wrote to the trustee informing the trustee that suit had been started in the District Court of Douglas County, Nebraska, on $10,000 of bonds. The letter states:

"Our attorneys also advise that the defense of lack of capacity or privilege to sue is always dependent upon the definiteness of the reference in the bond to the mortgage, which leaves leeway for a court to exercise its discretion and that in consequence this defense is not as certain as the waiver of defaults defense. Therefore, the default defense is the most essential the company will have in the premises.

"From all of the foregoing it will be seen that the immediate waiver of all defaults on your part as trustee, in conformity to Article III, Sec. 5 of the mortgage, is imperative."

On March 15, 1937, the trustee by letter to the bondholders' committee replied that it was advised by its counsel that no affirmative action on its part, as trustee, was required. The letter added that "this company is merely required to refrain from taking action on account of such existing defaults. This Company, as such Trustee, has accordingly taken no action in respect of such existing defaults in the payment of interest and principal."

■ Now at first blush it might seem as though one were straining at gnats in distinguishing between the action of the depositing bondholders in having waived a default, and their right to require the trustee to do so. A waiver of default though must be exercised in strict compliance with the provisions of the mortgage. As to whether a majority of the bondholders have the power to waive by anticipation an expected default, McClelland v. Norfolk Southern R. Co., supra, is in point. Previous to a default more than four-fifths of the bondholders had united in requesting the trustees to postpone the payment of any interest accruing on the bonds during the succeeding five years. The trustees assented and gave notice to the company to that effect. It was held:

"Certainly no duty can rest on the trustees to enforce the mortgage until a default has occurred, and it is only in the case of such a default, and the omission of the trustees to perform 'such duty,' that the bondholders are authorized to act * * * and even in the event of any such action, it is expressly provided that 'no action of the trustees or bondholders in case of any default shall affect any subsequent default, or any right arising therefrom.'

"It is quite impossible to reconcile this provision with the claim that the bondholders can anticipate a default, and provide for the operation of their action upon a future event. Such action is expressly prohibited by the terms of the agreement, and in the face of such prohibition such a power cannot be implied from other language of the instrument."

At the trial the parties stipulated to waive a jury and proceed with the case pursuant to Rule 52 of the Rules of Civil Procedure for the District Courts of the United States, 28 U.S.C.A. following section 723c. Accordingly I find that the plaintiff is entitled to judgment and request that counsel submit proposed findings and conclusions of law conformable with the foregoing opinion.